**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| MARGHERITA GUZZI VINCENTI, PATRICIA HUGHES, EMMA GRIFFIN, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>USA FENCING ASSOCIATION, DONALD ALPERSTEIN, PHIL ANDREWS, DAMIEN LEHFELDT, MOLLY HILL, KAT HOLMES, LAURYN DELUCA, SCOTT RODGERS, ANDREA PAGNANELLI, and JACKIE DUBROVICH,<br><br>        Defendants. | Case No.: 4:25-CV-00850-FJG |

<u>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**</u>

      Plaintiffs MARGHERITA GUZZI VINCENTI, PATRICIA HUGHES, EMMA GRIFFIN, and similarly situated individuals respectfully submit this memorandum in opposition to the motion to dismiss (Dkt. 14) filed by Defendants DONALD ALPERSTEIN, PHIL ANDREWS, DAMIEN LEHFELDT, MOLLY HILL, KAT HOLMES, LAURYN DELUCA, SCOTT RODGERS, ANDREA PAGNANELLI, and JACKIE DUBROVICH, (Together the "Individual Defendants"), and USA FENCING ASSOCIATION (All defendants together the "Defendants.")

# TABLE OF CONTENTS

INTRODUCTION AND FACTUAL BACKGROUND ........................................................... 1

LEGAL STANDARD .................................................................................................. 2

ARGUMENT ............................................................................................................ 2

A.    This Court has Personal Jurisdiction Over Defendants. .................................... 2

B.    The Ted Stevens Act Does Not Deprive this Court of Jurisdiction. ...................... 4

C.    Plaintiffs' Title IX Claim is Sufficiently Plead ................................................ 7

D.    Plaintiff's Missouri Merchandising Practices Act ("MMPA") is Properly
      Plead ........................................................................................................... 9

E.    Plaintiff's Breach of Contract Claim is Properly Plead ................................... 10

F.    Plaintiff's Conspiracy Claim is Properly Pled ............................................... 12

G.    Plaintiff's Negligent Misrepresentation and Negligence per se claim are
      properly plead and distinct from Plaintiff's Breach of MMPA Claim ................. 13

H.    Venue properly lies in this Court .................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Adkins v. Hontz,*
　280 S.W.3d 672 (Mo. Ct. App. 2009) ....................................................................... 4

*Andra v. Left Gate Prop. Holding, Inc.,*
　453 S.W.3d 216 (Mo. 2015) ...................................................................................... 2

*Ashcroft v. Iqbal,*
　556 U.S. 662 (2009) ................................................................................................... 9

*Boyd v. Wimes,*
　664 S.W.2d 596 (Mo. Ct. App. 1984) ....................................................................... 3

*Burger King Corp. v. Rudzewicz,*
　471 U.S. 462 (1985) ................................................................................................... 2

*Calder v. Jones,*
　465 U.S. 783(1984) .................................................................................................... 3

*D.R. Sherry Constr., Ltd. v. Am. Family Mut. Ins. Co.,*
　316 S.W.3d 899 (Mo. banc 2010) ............................................................................ 10

*Du Bois v. Bd. of Regents of the Univ. of Minn.,*
　987 F.3d 1199 (8th Cir. 2021) .................................................................................. 8

*Fitzgerald v. Barnstable Sch. Comm.,*
　555 U.S. 246 (2009) ................................................................................................... 6

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,*
　592 U.S. 351 (2021) ................................................................................................... 3

*Gebser v. Lago Vista Indep. Sch. Dist.,*
　524 U.S. 274 (1998) ................................................................................................... 6

*Gulf Restoration Network, Inc. v. Salazar,*
　683 F.3d 158 (5th Cir. 2012) .................................................................................... 6

*Hess v. Chase Manhattan Bank, USA, N.A.,*
　220 S.W.3d 758 (Mo. 2007) .................................................................................... 10

*Hinojosa v. Horn,*
　896 F.3d 305 (5th Cir. 2018) .................................................................................... 6

*J.Y.C.C. v. Doe Run Res., Corp.,*
　370 F. Supp. 3d 1047 (E.D. Mo. 2019) ................................................................... 3

*Lee v. United States Taekwondo Union*,
    331 F. Supp. 2d 1252 (D. Haw. 2004) ................................................. 6, 7

*Liberty Hills Dev., Inc. v. Stocksdale*,
    742 S.W.2d 209 (Mo. Ct. App. 1987) ...................................................... 10

*Massie v. Colvin*,
    373 S.W.3d 469 (Mo. Ct. App. 2012) ...................................................... 14

*Minn. Made Hockey, Inc. v. Minn. Hockey, Inc.*,
    789 F. Supp. 2d 1133 (D. Minn. 2011) ...................................................... 7

*Pliuskaitis v. USA Swimming, Inc.*,
    243 F. Supp. 3d 1217 (D. Utah 2017) ....................................................... 5

*Porter v. Berall*,
    293 F.3d 1073 (8th Cir. 2002) ................................................................. 2

*Rivet v. Regions Bank*,
    522 U.S. 470 (1998) ................................................................................ 5

*Schilling v. Human Support Servs.*,
    978 S.W.2d 368 (Mo. Ct. App. 1998) ....................................................... 4

*Shepard v. United States Olympic Committee*,
    464 F. Supp. 2d 1072 (D. Colo. 2006) ...................................................... 5

*Slaney v. Int'l Amateur Ath. Fed'n*,
    244 F.3d 580 (7th Cir. 2001) ................................................................... 6

*State ex rel. Hawley v. Robinson*,
    577 S.W.3d 823 (Mo. Ct. App. 2019) ....................................................... 9

*State ex rel. Metal Serv. Ctr., Inc. v. Gaertner*,
    677 S.W.2d 325 (Mo. 1984) .................................................................... 4

*Sternberg v. U.S.A. National Karate-Do Federation*,
    *123 F. Supp. 2d 659 (E.D.N.Y. 2000)* ....................................................... 5

*Western Blue Print Co., LLC v. Roberts*,
    367 S.W.3d 7 (Mo. banc 2012) .......................................................... 12, 13

*Wolfe v. Fayetteville, Ark. Sch. Dist.*,
    648 F.3d 860 (8th Cir. 2011) ................................................................... 8

*Zink v. Lombardi*,
    783 F.3d 1089 (8th Cir. 2015) ................................................................. 2

**Statutes**

20 U.S.C. § 1681 ................................................................................................ 5

20 U.S.C. § 1681(a) ........................................................................................... 8

28 U.S.C. § 1391(b) ........................................................................................... 15

28 U.S.C. § 1391(b)(1) ...................................................................................... 15

28 U.S.C. § 1391(b)(2) ...................................................................................... 15

Mo. Rev. Stat. § 407.010.4.1 ............................................................................ 9

Mo. Rev. Stat. § 407.020 .................................................................................. 9

Mo. Rev. Stat. § 506.500 .................................................................................. 4

**Other Authorities**

Rehabilitation Act and Civil Rights Act ........................................................... 5

## INTRODUCTION AND FACTUAL BACKGROUND

This civil rights and consumer protection action arises from Defendants' intentional decisions to market national fencing tournaments as women's competitions while knowingly permitting biological males to compete, without disclosure and in violation of federal and Missouri law. Defendant USA Fencing Association ("USFA") is the National Governing Body for fencing in the U.S. and operates nationwide training, certification, and competition programs. In January 2025, USFA hosted the North American Cup ("NAC") in Kansas City, Missouri, advertising women's events as sex-segregated competitions. Plaintiffs registered, paid fees, traveled, and competed in reliance on those representations. Unbeknownst to them, Defendants had adopted and implemented policies permitting biological males to compete in women's categories, including youth and cadet divisions involving minors.

Plaintiffs do not seek to overturn a selection decision or challenge a referee's call. They seek redress for sex-based discrimination, harmful and deceptive business practices, and the misuse of federally funded educational programs. Defendants now seek dismissal by invoking the Ted Stevens Olympic and Amateur Sports Act ("ASA"), arguing Plaintiffs' claims are "eligibility dispute[s]" subject to internal arbitration; such a premise is incorrect. Plaintiffs do not challenge their eligibility to compete; rather, they challenge Defendants' decision to abolish sex-based competition while continuing to market events as women's competitions, while receiving federal financial assistance and operating as an educational institution subject to Title IX.

The ASA neither grants national governing bodies immunity from federal civil rights statutes, nor preempts state consumer protection laws. Title IX contains its own comprehensive enforcement scheme, imposes no exhaustion requirement, and provides a private right of action for discrimination in federally funded programs. Missouri law prohibits deceptive advertising and

sex-based discrimination. Accepting Defendants' position would effectively create a regulatory vacuum in which national sports organizations could discriminate, deceive consumers, and misuse federal funds without judicial oversight.

Because Plaintiffs plausibly allege violations of Title IX and Missouri law, and because the ASA does not preempt or divest this Court of jurisdiction, Defendants' motion should be denied. At worst, Plaintiffs should be given leave to amend.

## LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded facts as true and draws reasonable inferences in Plaintiffs' favor.. *Iqbal*, 556 U.S. at 678; *Zink v. Lombardi* 783 F.3d 1089, 1098 (8th Cir. 2015). Personal jurisdiction exists if consistent with Missouri's long-arm statute and due process. *Porter v. Berall*, 293 F.3d 1073, 1075–76 (8th Cir. 2002); *Andra v. Left Gate Prop. Holding, Inc.*, 453 S.W.3d 216, 225 (Mo. 2015).

## ARGUMENT

### A. This Court has Personal Jurisdiction Over Defendants.

This Court has specific personal jurisdiction over USFA and the Individual Defendants because Plaintiffs' claims arise from their purposeful, forum-directed activities in Missouri. USFA is the exclusive National Governing Body for fencing in the United States. It scheduled, organized, sanctioned, and governed the Kansas City tournament, set the eligibility rules that applied at that event, and collected fees from participants competing in Missouri. Compl. ¶¶ 2, 7, 19, 39, 40, 41, 44, 45, 47. By operating a national competition in Missouri and exercising regulatory authority over Missouri athletes at that event, USFA purposefully availed itself of the privilege of conducting activities within the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985). Plaintiffs' claims arise directly out of that forum-directed conduct, satisfying the

requirement that the litigation arise out of or relate to Defendants' contacts with the forum. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359–60 (2021).

The Individual Defendants are not insulated from jurisdiction by virtue of their corporate roles. Corporate officers and board members are subject to personal jurisdiction for their own tortious or unlawful conduct undertaken in an official capacity. *Calder v. Jones*, 465 U.S. 783, 790 (1984). As alleged, the Individual Defendants personally participated in, approved, and implemented the policies governing athlete eligibility at the Kansas City tournament. Compl. ¶¶ 2, 3, 8, 20, 32–34, 37–39, 41. Those policies were applied in Missouri, to Missouri events, and to Missouri participants. Defendants therefore purposefully directed their conduct at this forum and must reasonably anticipate being haled into court. *Id.* at 789–90.

The fiduciary shield doctrine does not bar the exercise of personal jurisdiction over the Individual Defendants. The Eighth Circuit recognizes that corporate officers and employees are subject to personal jurisdiction when they personally participate in tortious or unlawful conduct directed at the forum state. *See, e.g.*, *J.Y.C.C. v. Doe Run Res., Corp.*, 370 F. Supp. 3d 1047, 1056–57 (E.D. Mo. 2019) (corporate officer not shielded from personal jurisdiction where he had actual knowledge of and participated in tortious conduct directed at Missouri, even though acts were taken in corporate capacity). Under Missouri law, corporate officers may be held individually liable for tortious corporate conduct if they have actual or constructive knowledge of, and participated in, an actionable wrong. *Id*. (citing *Boyd v. Wimes*, 664 S.W.2d 596, 598 (Mo. Ct. App. 1984)). Where, as here, the Individual Defendants are alleged to have personally approved, implemented, and enforced the challenged policies, their status as corporate decisionmakers does not insulate them from jurisdiction.

This is particularly true where the claims sound in discrimination and knowing

misrepresentation. The Individual Defendants are alleged to have knowingly adopted and enforced policies applied at the Kansas City tournament and would affect and harm female athletes competing in Missouri. Compl. ¶¶ 3, 20, 32–34, 37–39, 41, 45, 76. When an individual defendant intentionally directs discriminatory or deceptive conduct at a known forum event and forum participants, personal jurisdiction is proper even absent physical presence in the state. *Calder*, 465 U.S. at 789–90.

Defendants did not merely place a product into the stream of commerce or interact incidentally with Missouri residents; rather, they selected Missouri for a national competition, imposed binding eligibility rules on Missouri participants, and reaped economic and organizational benefits. The alleged injuries are the foreseeable consequence of their forum-directed conduct.

Missouri has a strong interest in providing a forum for redress when out-of-state entities conduct business and cause injury within its borders. *See, e.g.,* Mo. Rev. Stat. § 506.500; *Adkins v. Hontz*, 280 S.W.3d 672, 678 (Mo. Ct. App. 2009); *State ex rel. Metal Serv. Ctr., Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. 1984); *Schilling v. Human Support Servs.*, 978 S.W.2d 368, 371 (Mo. Ct. App. 1998). Litigating in Missouri is also consistent with notions of fair play and substantial justice. The relevant events occurred in Missouri, the policies that are the crux of Plaintiffs' claims were implemented in Missouri, key witnesses and evidence are located in or tied to Missouri, and Defendants voluntarily chose Missouri as the tournament site. Further, Missouri has a strong interest in protecting female athletes from discrimination in events held within its borders.

**B. The ASA Does Not Deprive this Court of Jurisdiction.**

The ASA does not contain any express preemption clause that would bar Plaintiffs' claims against USA Fencing. This absence is particularly significant for Plaintiffs' Title IX claims, which

arise under a separate federal statute with its own comprehensive enforcement scheme. Title IX prohibits sex-based discrimination in education programs receiving federal financial assistance, stating that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C.S. § 1681. The Complaint alleges the receipt of such assistance.

Complete preemption only applies in extraordinary circumstances where Congress clearly intended to make a cause of action exclusively federal. The Supreme Court has recognized complete preemption in only a limited number of areas, such as certain ERISA and Labor Management Relations Act claims. *Rivet v. Regions Bank*, 522 U.S. 470, 475-76 (1998). The ASA does not fall within this narrow category of statutes with complete preemptive effect. In addition, courts have recognized that "the [ASA] does not preempt federal statutes prohibiting…discrimination." *Pliuskaitis v. USA Swimming, Inc.*, 243 F. Supp. 3d 1217, 1226 (D. Utah 2017). Moreover, the ASA does not displace a separate federal law where, as here, the two statutes may be reconciled. *Id.*

Federal courts have rejected the argument that the ASA bars federal civil rights claims. In *Shepard v. United States Olympic Committee*, disabled and minority athletes brought claims under the Rehabilitation Act and Civil Rights Act, and the court held that the ASA did not preempt those claims. 464 F. Supp. 2d 1072, 1076, 1088 (D. Colo. 2006). Similarly, in *Sternberg v. U.S.A. National Karate-Do Federation*, a female athlete was permitted to proceed with a Title IX claim against a national governing body. 123 F. Supp. 2d 659 (E.D.N.Y. 2000). Such cases reflect the settled principle that the ASA does not grant national governing bodies immunity from federal anti-discrimination statutes.

Title IX also contains its own enforcement scheme and imposes no administrative exhaustion requirement. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255 (2009). Plaintiffs may file directly in court and obtain the full range of remedies. *Id.* The Supreme Court has explained that Title IX was enacted to "avoid the use of federal resources to support discriminatory practices" and to "provide individual citizens effective protection against those practices." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998). Those purposes would be frustrated if plaintiffs were required to exhaust internal ASA procedures before bringing Title IX claims.

Defendants' reliance on the ASA's arbitration provision is likewise misplaced. The scope of that provision does not extend to all claims, and courts have recognized that individuals retain the right to file suit in federal court for discrimination claims notwithstanding the ASA. *Lee v. United States Taekwondo Union*, 331 F. Supp. 2d 1252, 1259 (D. Haw. 2004). Even where exhaustion might otherwise be required, courts recognize exceptions where administrative remedies are unavailable, wholly inappropriate, or futile. *Hinojosa v. Horn*, 896 F.3d 305, 314 (5th Cir. 2018); *Gulf Restoration Network, Inc. v. Salazar*, 683 F.3d 158, 176 (5th Cir. 2012). The ASA's internal dispute mechanisms are inadequate because they cannot adjudicate federal civil rights violations or provide the relief Plaintiffs seek. Even if exhaustion applied, ASA remedies are futile for systemic discrimination claims, as they cannot award damages or enjoin policies violating federal law.

Defendants also mischaracterize this case as an "eligibility dispute." Courts have found ASA preemption only in a narrow category of cases where an athlete or coach sought to challenge an internal selection, eligibility, or disciplinary decision and attempted to recast that grievance as a tort or contract claim. *See, e.g.*, *Slaney v. Int'l Amateur Ath. Fed'n*, 244 F.3d 580, 587 (7th Cir. 2001); *Lee*, 331 F. Supp. 2d at 1254–57. In those cases, the essence of the claim was a challenge

to the plaintiff's own status or discipline, and courts held that the ASA's arbitration process was the exclusive avenue of relief.

Here, the Complaint does not concern Plaintiffs' eligibility to compete. Rather, the Complaint challenges Defendants' policy of permitting athletes assigned male at birth to compete in women's categories at the NAC and the conditions those policies create for female athletes. Compl. ¶¶ 1, 3, 39–46, 64–69, 76, 89–90. Although the claims arise from Defendants' eligibility policy, the crux of Plaintiffs' case is about the composition of the competition, safety, fairness, and Defendants' failure to disclose material facts to participants.

Plaintiffs also allege that USFA never implemented any system to monitor or verify compliance with its own policies. Compl. ¶¶ 41, 67, 90. Courts have recognized the authority of federal courts to ensure that amateur sports organizations follow their own internal rules. *United States Taekwondo Union*, 331 F. Supp. 2d at 1259 (citing *Slaney*, 244 F.3d at 595). Because Plaintiffs' claims do not challenge the purpose or operation of the ASA and do not seek to overturn an eligibility determination, the ASA's arbitration provision does not deprive this Court of subject matter jurisdiction.

Finally, even as to state-law claims, preemption depends on whether the claim directly conflicts with the ASA's purposes or unduly interferes with its operation. *Minn. Made Hockey, Inc. v. Minn. Hockey, Inc.*, 789 F. Supp. 2d 1133, 1142 (D. Minn. 2011). Plaintiffs' claims allege fraudulent and unlawful business practices that go well beyond a typical sports eligibility dispute. Compl. ¶¶ 1, 3, 20, 37–48, 51, 52(ii)–(iv), 53(ii)–(iii), 64–69, 75–77, 81–85, 89–99, 100–103, 108–113, 115–119, 122–130.

**C.  Plaintiffs' Title IX Claim is Sufficiently Plead.**

Defendants' motion mischaracterizes the nature of Plaintiffs' Title IX claim. Plaintiffs do not dispute that transgender individuals are entitled to Title IX protections or allege that transgender athletes should be excluded from athletic participation. Plaintiffs allege that Defendants dismantled sex-segregated competition by permitting biological males to compete in women's categories, thereby subjecting female athletes to unequal conditions of participation and denying them the benefits of sex-based athletic competition. Compl. ¶¶ 1, 3, 39–45, 64–69, 75–77, 89–95.

Title IX prohibits not only exclusion from participation, but also the denial of benefits and subjection to discrimination on the basis of sex. 20 U.S.C. § 1681(a). Courts in the Eighth Circuit analyze Title IX claims under the same framework as Title VII claims and recognize that policies which impose unequal conditions on female athletes constitute actionable discrimination. "We have…held that 'the Supreme Court's interpretation of Title VII properly informs our examination of Title IX.'" *Du Bois v. Bd. of Regents of the Univ. of Minn.*, 987 F.3d 1199, 1203 (8th Cir. 2021) (quoting *Wolfe v. Fayetteville, Ark. Sch. Dist.*, 648 F.3d 860, 865–66 (8th Cir. 2011) (applying Title VII jurisprudence to a Title IX discrimination claim)).

Plaintiffs need only allege facts supporting a plausible inference that Defendants' policy treated female athletes differently because of sex, which Plaintiffs have done. The Complaint alleges that "biological males of all ages, including those under 16 as well as adult transgender athletes, were permitted to compete in women's events." Compl. ¶¶ 39–43, 64–68, 89. It further alleges that Defendants did not enforce any mechanism to ensure that athletes assigned male at birth met physiological criteria associated with female competition. Compl. ¶¶ 41, 67, 90.

Defendants' argument that Plaintiffs cannot allege discriminatory intent fails at the pleading stage. Plaintiffs allege that Defendants knowingly adopted and implemented a policy that permitted male-bodied athletes to compete in women's categories without any meaningful sex-

based limitation. Compl. ¶¶ 3, 20, 32–34, 37–43, 64–69, 75, 76, 89, 90. A policy that foreseeably and systematically disadvantages female athletes is sufficient to support an inference of sex-based discrimination. Plaintiffs are not required to prove discriminatory motive at this stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

### D. Plaintiff's Missouri Merchandising Practices Act ("MMPA") is Properly Plead.

A *prima facie* case under the MMPA consists of three elements: (1) an act, use or employment of deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact; (2) by a person; (3) in connection with the sale or advertisement of any merchandise in trade or commerce. *State ex rel. Hawley v. Robinson*, 577 S.W.3d 823, 830 (Mo. Ct. App. 2019) (citing Mo. Rev. Stat. § 407.020). The definition of "merchandise" includes services as invoked here. Mo. Rev. Stat. § 407.010.4.1.

Defendants erroneously suggest that Plaintiffs knew of USFA's transgender eligibility policy before competing. The Complaint alleges no such thing, and Defendants' citations do not support that assertion.

Defendants further contend that no misleading statement was made because Plaintiffs "rely on the language of the Transgender Eligibility Policy" and their dispute is with whether the policy "should be permissible." That argument mischaracterizes the claim. Plaintiffs do not allege that the existence of a transgender policy by itself is deceptive. Plaintiffs allege that Defendants marketed and held the tournament as a "women's" competition while failing to disclose that the women's events would include biological males. Compl. ¶¶ 44–48, 79–81, 86–89, 91–93, 95.

The MMPA also prohibits concealment or omission of material facts in connection with the sale or advertisement of merchandise. Mo. Rev. Stat. § 407.020. A reasonable consumer deciding whether to pay registration fees, incur travel expenses, and participate in a women's athletic

9

competition would consider it material whether the event included biological males competing in the women's categories. Plaintiffs allege that Defendants concealed that information while continuing to advertise and operate the tournament as a women's competition. Compl. ¶¶ 44–48, 86–89, 91–93, 95, 99–101.

Plaintiffs have also adequately alleged an ascertainable loss. Plaintiffs paid registration fees, travel and lodging expenses, and purchased equipment in reliance on Defendants' representations, only to be deprived of the benefit of participating in sex-segregated competition. Compl. ¶¶ 44–48, 86–89, 91–93, 95, 99–101.

Defendants' suggestion that Plaintiffs could simply have withdrawn ignores the pleaded facts. Plaintiffs allege that Defendants concealed information, thus depriving Plaintiffs of the ability to make an informed decision. Compl. ¶¶ 42, 44–45, 86, 88–89, 91–93, 96, 99–100. A reasonable consumer would not be expected to infer undisclosed material facts or speculate about the composition of the competition. *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 774 (Mo. 2007).

### E. Plaintiff's Breach of Contract Claim is Properly Plead.

Under Missouri law, the elements of a breach of contract claim are: (1) the existence of a valid contract; (2) the defendant's breach of that contract; and (3) resulting damages. *D.R. Sherry Constr., Ltd. v. Am. Family Mut. Ins. Co.*, 316 S.W.3d 899, 904 (Mo. banc 2010). Plaintiffs have adequately alleged each element.

First, Plaintiffs have plausibly alleged the existence of a contract between themselves and USA Fencing. Under Missouri law, a contract is formed where there is offer, acceptance, and consideration. *Liberty Hills Dev., Inc. v. Stocksdale*, 742 S.W.2d 209, 212 (Mo. Ct. App. 1987). The Complaint alleges that Plaintiffs purchased memberships with USA Fencing, paid

membership dues and registration fees, and agreed to be bound by USA Fencing's governing documents. Compl. ¶¶ 2, 19, 45, 47, 82, 83(a), 104–105, 112. Plaintiffs' payments constitute consideration, and USA Fencing's membership terms, bylaws, and governing policies constitute the offer and contractual terms.

Plaintiffs further allege that USA Fencing's mission statement, bylaws, and governing policies were material terms of the membership agreement and were relied upon by Plaintiffs in deciding to purchase memberships and register for competitions. Compl. ¶ 104–106, 108–109, 111–112. Those governing documents define USA Fencing's obligations to its members, including its commitment to fair competition, integrity, and the administration of fencing programs consistent with its stated mission. Plaintiffs are not required to attach or quote the contract in the Complaint.

Second, Plaintiffs have alleged breach. The Complaint alleges that Defendants failed to abide by USA Fencing's own mission statement and bylaws in the administration of the Missouri tournament by dismantling sex-segregated competition and failing to enforce eligibility standards consistent with fair and equitable competition. Compl. ¶¶ 3, 39–45, 64–69, 75–77, 105, 108–109, 111–113. Plaintiffs, therefore, sufficiently allege that Defendants' actions were inconsistent with the governing rules and representations under which Plaintiffs became members and registered to compete.

Third, Plaintiffs have adequately alleged damages: membership dues, registration fees, travel and lodging expenses, and the equipment purchased in reliance on USA Fencing's contractual commitments. Compl. ¶¶ 45, 47, 82, 83(a), 100, 102, 105, 112, 113. These expenses and loss of contractual benefits constitute recoverable damages under Missouri law. Plaintiffs allege that these losses exceeded $1,000 per fencer. Compl. ¶ 102–103, 130. Such allegation is sufficient to plead

damages flowing from the breach. Defendants' attempt to characterize USA Fencing's governing documents as nonbinding "aspirational" statements is premature and fact-bound.

### F. Plaintiff's Conspiracy Claim is Properly Pled.

Under Missouri law, civil conspiracy is an agreement or understanding between two or more persons to do an unlawful act, or to use unlawful means to do a lawful act, resulting in damages. *Western Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 19 (Mo. banc 2012). To state a claim, a plaintiff must allege: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) [plaintiff] was thereby damaged. *Id.* First, Plaintiffs allege the participation of multiple Defendants, including USA Fencing and individual decision-makers, who collectively controlled the policies, communications, and administration of the Missouri tournament. Compl. ¶¶ 3, 7–15, 19–20, 37–39, 41, 44–48, 76.

Second, Plaintiffs plausibly allege an agreement and common purpose. The Complaint alleges that Defendants jointly approved, implemented, and enforced policies permitting biological males to compete in women's categories while simultaneously concealing the extent of such participation from competitors. Compl. ¶¶ 39-44, 64-67. It further alleges that Defendants collectively decided not to disclose whether and to what extent biological males would be competing in the women's events, despite knowing that such information was material to participants. Compl. ¶¶ 20, 37–38, 42, 44–45, 86, 88–89, 91–93, 99–101, 115–118.

Third, Plaintiffs allege unlawful means and unlawful objectives. The conspiracy's purpose was to misrepresent and conceal material facts about the composition of the women's competition, in violation of Missouri consumer protection law and Plaintiffs' contractual rights. Compl. ¶¶ 81–85, 89–99, 100–103, 105, 108–113, 115–119. Concealment of material facts in connection with the

sale or advertisement of services constitutes unlawful conduct under the MMPA, and coordinated concealment of such facts satisfies the "unlawful means" requirement.

Fourth, Plaintiffs allege overt acts in furtherance of the conspiracy. These include approving and enforcing the eligibility policy, marketing the tournament as a women's competition without disclosure, processing registrations, collecting fees, and allowing the event to proceed without transparency regarding the participation of biological males. Compl. ¶¶ 3, 20, 39, 41–42, 44–48, 82, 83(a), 86–93, 95–101, 115–118.

Finally, Plaintiffs allege damages. Plaintiffs paid registration fees, travel and lodging expenses, and purchased equipment in reliance on Defendants' coordinated misrepresentations and omissions, and were deprived of the benefit of sex-segregated competition. Compl. ¶¶ 45, 47, 82, 83(a), 96, 99–103, 113, 128, 130. These losses are the direct and foreseeable result of Defendants' concerted conduct.

Missouri law permits conspiracy to be inferred from circumstantial evidence and coordinated conduct. *Roberts*, 367 S.W.3d at 19. The Complaint alleges parallel actions, shared objectives, and coordinated decision-making sufficient to plausibly plead a civil conspiracy.

### G. Plaintiff's Negligent Misrepresentation and Negligence per se claim are properly plead and distinct from Plaintiff's Breach of MMPA Claim.

Defendants' argument that Plaintiffs' negligent misrepresentation and negligence per se claims are merely repackaged versions of the MMPA claim is incorrect.

Missouri law recognizes negligent misrepresentation where: (1) the speaker supplied information in the course of his business or because of some other pecuniary interest; (2) due to the speaker's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false; (3) the speaker intentionally provided the information for the guidance of a limited group of persons in a particular business transaction; (4) the hearer

justifiably relied on the information; and (5) that as a result of the hearer's reliance on the statement, he suffered a pecuniary loss. *Massie v. Colvin*, 373 S.W.3d 469, 472 n.4 (Mo. Ct. App. 2012).

The Complaint alleges that Defendants marketed and represented the tournament as a women's competition, supplied information to induce registration, and failed to exercise reasonable care by concealing or omitting material facts regarding the participation of biological males in the women's categories. Compl. ¶¶ 44–48, 86–89, 91–93, 95, 99–101, 124–127. Plaintiffs allege that they relied on these representations and omissions in registering, traveling, and competing, thus suffering economic losses. Compl. ¶¶ 45, 47, 48, 83(a), 96, 99–103, 127–128, 130.

Under Missouri law, negligence per se applies where a defendant violates a statute enacted to protect a class of persons of which the plaintiff is a member, and the violation causes the type of injury the statute was designed to prevent. Plaintiffs allege that Defendants violated Missouri statutes governing women's athletics and consumer protection by misrepresenting and unlawfully operating the tournament as a women's competition while permitting biological males to compete. Compl. ¶¶ 71–76, 79–81, 84–86, 88, 89, 91, 92, 95, 97. Plaintiffs are members of the class the statutes were designed to protect, and the injuries alleged—economic loss and deprivation of sex-segregated athletic opportunities—are precisely the type of harm those statutes seek to prevent.

Defendants' "duplicative claim" argument fails because Missouri law expressly permits plaintiffs to plead alternative and even inconsistent theories of recovery arising from the same conduct. The fact that the same misrepresentations and omissions support statutory, contract, and tort claims does not collapse those claims into one. Each cause of action is grounded in a distinct legal duty: the MMPA imposes statutory duties against deception, negligent misrepresentation arises from a common law duty to provide accurate information in business transactions, and negligence per se arises from the violation of legislatively imposed standards of care.

14

At the pleading stage, Plaintiffs are entitled to pursue all legally cognizable theories supported by the facts. Whether Defendants' conduct ultimately satisfies the elements of each claim is a question for discovery and, if appropriate, summary judgment.

**H. Venue properly lies in this Court.**

Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2). A civil action may be brought in a judicial district where any defendant resides, if all defendants are residents of the state in which the district is located, and in a district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b).

As alleged in the Complaint, the fencing tournament at issue took place in Missouri, Plaintiffs' injuries were suffered in Missouri, and Defendants' conduct was purposefully directed at Missouri. Compl. ¶¶ 2, 19, 20, 21, 45, 47, 74, 76. Defendants marketed, organized, and operated the event in Missouri, accepted registrations and payments from Missouri-based participants, and implemented the challenged policies in the context of a Missouri competition. The operative conduct and resulting harm therefore occurred in this District. Venue is proper under § 1391(b)(2) as substantial events and Plaintiffs' injuries occurred in Missouri. Venue is also proper as to the individual defendants because their suit-related conduct was expressly aimed and caused foreseeable injury in Missouri.

WHEREFORE Plaintiffs ask that this Court enter an order DENYING Defendants' motion to dismiss. In the alternative, should the Court consider any aspect of the complaint to be deficient, Plaintiffs ask that they be granted leave to amend the complaint.

Dated: January 14, 2026

Respectfully submitted,

/s/Karin M. Sweigart
KARIN M. SWEIGART
MO Bar #75943
KSweigart@dhillonlaw.com
Dhillon Law Group Inc.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700

Charles Xiaolin Wang (admitted *pro hac vice*)
DC Bar＃：470265
cwang@mbhylaw.com
Mahdavi, Bacon, Halfhill & Young, PLLC
11350 Random Hills Road, Suite 700
Fairfax, Virginia 22030
(703) 420-7620

James T. Bacon (admitted *pro hac vice*)
VA Bar＃：22146
jbacon@mbhylaw.com
Mahdavi, Bacon, Halfhill & Young, PLLC
11350 Random Hills Road, Suite 700
Fairfax, Virginia 22030
(703) 420-7620
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2026, a true and correct copy of the foregoing was filed on ECF and was served on all counsel of record:

/s/Karin M. Sweigart
Karin M. Sweigart