IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MARGHERITA GUZZI VINCENTI, PATRICIA HUGHES, EMMA GRIFFIN, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>USA FENCING ASSOCIATION, DONALD ALPERSTEIN, PHIL ANDREWS, DAMIEN LEHFELDT, MOLLY HILL, KAT HOLMES, LAURYN DELUCA, SCOTT RODGERS, ANDREA PAGNANELLI, and JACKIE DUBROVICH,<br><br>       Defendants. | Case No.: 4:25-CV-00850-FJG |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants USA Fencing[1] ("USFA"), Donald Alperstein, Phil Andrews, Damien Lehfeldt, Molly Hill, Kat Holmes, Lauryn Deluca, Scott Rodgers, Andrea Pagnanelli, and Jackie Dubrovich (all defendants collectively referred to as "Defendants" and individually named defendants collectively referred to as the "Individual Defendants"), by and through their undersigned counsel, respectfully submit this Reply in Support of their Motion to Dismiss for lack of personal jurisdiction, lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, and improper venue.

I.     **INTRODUCTION**

Although surely not their intent, Plaintiffs' Response in Opposition to Defendants' Motion

---

[1] USFA has been improperly named in this matter as USA Fencing Association.

1

to Dismiss (Plaintiffs' "Response") offers more support for Defendants' position than their own. Plaintiffs' Response is comprised of admissions and contradictory arguments that reveal the fatal flaws in their claims and provide this Court with the necessary grounds for dismissing their claims for (1) lack of personal jurisdiction; (2) lack of subject matter jurisdiction; (3) failure to state a claim; and (4) improper venue. For the reasons explained below and in Defendants' Motion to Dismiss, Defendants respectfully request this Court grant their Motion and dismiss all Plaintiffs' claims with prejudice.

## II. LEGAL ARGUMENT

### a. Plaintiffs' admissions and contradictory arguments defeat their claims against Defendants.

#### i. Plaintiffs' Title IX Claim

In Plaintiffs' Response, they assert that they "do not dispute that transgender individuals are entitled to Title IX protections or allege that transgender athletes should be excluded from athletic participation." Doc. 25, pg. 13. Plaintiffs acknowledge that Title IX prohibits Defendants from excluding transgender individuals "from participation" in USFA's athletic competitions. *Id*. Yet, Plaintiffs support their Title IX claim by claiming that "Defendants dismantled sex-segregated competition by permitting biological males to compete in women's categories." *Id*. In other words, Plaintiffs appear to want Defendants to exclude transgender individuals from USFA's athletic competitions while simultaneously admitting that Title IX prohibits Defendants from excluding transgender individuals "from participation" in USFA's athletic competitions. *Id*. Plaintiffs' Response reveals their flawed logic and flawed argument in support of their Title IX claim, which is ultimately fatal to their claim.

Additionally, in Plaintiffs' Response, they notably fail to address Defendants' legal arguments that Plaintiffs have not and cannot plead that they were excluded from or denied the

2

benefits of competition because of their gender or that they were treated adversely because of their gender. Doc. 25, pgs. 14-15. As Defendants explain in their Motion to Dismiss, Plaintiffs admit that they "participated in the…January NAC" and that they do not know whether any transgender individuals participated in any given event during the January NAC. Doc. 1, ¶¶ 4-6, 42. Moreover, because Plaintiffs participated in the January NAC and do not know whether any transgender individuals also participated, they have not and cannot show that USFA implemented and enforced its Transgender Eligibility Policy because of their genders, that they were negatively treated because of their genders, or that they have any alleged damages.

For these reasons and those explained in Defendants' Motion to Dismiss, Defendants respectfully request this Court to dismiss Plaintiffs' Title IX claim because Plaintiffs have failed to state a claim upon which relief can be granted.

    ii.  <u>Plaintiffs' MMPA/Conspiracy/Negligent Misrepresentation/Negligence Per Se Claims</u>

Plaintiffs' arguments in support of their Missouri Merchandising Practices Act ("MMPA")/false advertising, conspiracy, and negligent misrepresentation/negligence per se claims share a common flaw. In Plaintiffs' Response in support of their Missouri Merchandising Practices Act claim, they allege that they did not know USFA's Transgender Eligibility Policy. *See* Doc. 25, pg. 14. Plaintiffs assert that Defendants' "marketed and held the tournament as a 'women's' competition while failing to disclose that the women's events would include biological males."[2]

---

[2] As will be shown below, because Plaintiffs were aware that transgender individuals could compete at the January NAC, it is unclear what additional disclosure Plaintiffs desire. It appears Plaintiffs' wanted Defendants to disclose the identities of any underage transgender individuals competing in the competition to all athletes – and their lawsuit requests for information regarding underage transgender individuals to be produced in the course of discovery so that Plaintiffs can create a class action of individuals. *See* Doc. 1, ¶¶ 42-45. However, the disclosure of the identities of underage transgender individuals would raise several other legal concerns.

3

*Id*. Plaintiffs further allege that "Defendants concealed [that biological males could compete in women's categories] while continuing to advertise and operate the tournament as a women's competition." *Id*. at 15.

Similarly, in an attempt to rebut Defendants' argument for dismissal of Plaintiffs' conspiracy claim, Plaintiffs assert that Defendants "approved, implemented, and enforced policies permitting biological males to compete in women's categories while simultaneously concealing the extent of such participation from competitors." *Id*. at 17. Further, Plaintiffs assert that Defendants conspired by misrepresenting and concealing material facts about the women's competition at issue, and that Defendants failed to be transparent about the individuals participating in the event. *Id*. at 18.

Likewise, Plaintiffs assert in support of their negligent misrepresentation/negligence per se claim that Defendants "failed to exercise reasonable care by concealing or omitting material facts regarding the participation of biological males in the women's categories." *Id*. at 19. Plaintiffs' further claim that "they relied on these representations and omissions in registering, traveling, and competing, thus suffering economic loss." *Id*.

The critical and necessary point on which Plaintiffs' arguments rely is that USFA allegedly concealed and/or misrepresented its Transgender Eligibility Policy and the alleged participation of biological males in women's categories at the January NAC to Plaintiffs. However, these statements are in direct contradiction to the allegations raised in Plaintiff's Complaint. In Plaintiffs' Complaint they admit that they knew of Defendants' Transgender Eligibility Policy before competing in the January NAC event. *See* Doc. No. 1, ¶¶ 4-6, 39-44, and 64-67. *See* e.g., "Defendant USFA has adopted and maintained a 'Transgender and Non-Binary Athlete Eligibility Policy'" at Doc. No. 1 ¶ 64; "Defendant USFA Athlete Handbook, in force from 2022 until August

4

1, 2025, explicitly allows athletes … to compete in categories that align with their self declared gender identity" at Doc. No. 1, ¶ 67. "As approved and implemented by the individual Defendants, and continuing until August 1, 2025, Defendant USFA maintained a near-blanket policy permitting athletes … to compete in women's fencing events regardless of their sex assigned at birth" at Doc. No. 1 para. 39. *See also* Doc. No. 1, ¶ 2, which notes that the January NAC was held from January 3 to 6, 2025. Plaintiffs even claim that, because of the policy above, it "**could have been expected**" that "biological males under 16" would "compete in the women's events" that were held. (Emphasis added) Doc. 1, ¶ 40.

Accordingly, Plaintiffs admit not only that Defendants had a known policy that permitted athletes to compete in women's fencing events regardless of their sex, but that it was **expected** for males to compete as women, and that they agreed to this Policy as part of their alleged contract with USFA. Despite these admissions and arguments, Plaintiffs ignore their own allegations and simultaneously argue the inverse to support their claims of violation of the MMPA, breach of contract, conspiracy, and negligent misrepresentation/negligence per se. Plaintiffs cannot have it both ways and properly plead their claims. A policy cannot be misrepresented and concealed yet published and clear at the same time. Therefore, this Court should dismiss Plaintiffs' claims of violation of the MMPA/false advertising, breach of contract, conspiracy, and negligent misrepresentation/negligence per se because Plaintiffs have failed to state a claim upon which relief can be granted.

   iii.  <u>Plaintiffs' Breach of Contract Claim</u>

Plaintiffs' admissions in their Response reveal that, even if there was a contract, which Defendants deny, no breach occurred. As explained above, Plaintiffs claim that USFA's "mission statement, bylaws, and governing policies were material terms of the membership agreement and

5

were relied upon by Plaintiffs," and that one of the governing policies permitted athletes to compete in women's events regardless of their sex assigned at birth. *Id*. at 16; Doc. 1, ¶ 39. Plaintiffs accordingly acquiesced to the possibility that transgender individuals could compete in the January NAC. *See* Doc. No. 1, ¶ 4-6, 39-44, and 64-67. Therefore, if a contract exists, Plaintiffs willingly entered it not only knowing but, by their own admission, expecting biological males to compete in the January NAC as females. Doc. 1, ¶ 40. Simply because what Plaintiffs knew could be possible (*i.e.*, transgender individuals competing in the January NAC) might have come true does not establish a breach. For these reasons, Plaintiffs have failed to state a claim for breach of contract upon which relief can be granted, and the Court should dismiss their claim.

      **b.**      **Plaintiffs failed to satisfy their burden of establishing that this Court has personal jurisdiction over the Individual Defendants.**

In Plaintiffs' Response, they offer two cases, *Calder v. Jones*, 465 U.S. 783, 790 (1984) and *J.Y.C.C. v. Doe Run Res., Corp.*, 370 F. Supp. 3d 1047, 1056-57 (E.D. Mo. 2019), to support their position that the "Individual Defendants are not insulated from jurisdiction by virtue of their corporate roles" because "[c]orporate officers and board members are subject to personal jurisdiction for their own tortious or unlawful conduct undertaken in an official capacity." Doc. 25, pg. 8. Neither *Calder* nor *Doe Run* offer the support Plaintiffs claim them to.

For example, in *Calder*, the court evaluated whether it had personal jurisdiction over a reporter and editor of the National Enquirer. 465 U.S. at 784-85. The respondent, Jones, brought suit in California against the reporter and editor "claiming that she had been libeled in an article written and edited by petitioners in Florida." *Id*. at 784. The reporter resided in Florida but made frequent trips to California on business, wrote the first draft of the article at issue, had his byline attached to the article circulated in California, called sources in California for the information contained in the article, and, before the publication of the article, called Jones' "home and read her

6

husband a draft of the article so as to elicit his comments upon it." *Id*. at 785-86. The editor also resided in Florida, was the president and editor of the magazine, oversaw "just about every function of the [magazine]," reviewed and approved the subject of the article and edited the final version of the article, and refused to print a retraction requested by Jones. *Id*.at 786. The court held it had personal jurisdiction over the two individuals because they made intentional acts "expressly aimed at California," wrote and edited an article "that they knew would have a potentially devastating impact on" Jones, and "they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the [magazine] has its largest circulation." *Id*. at 789-90.

Similarly, in *Doe Run*, the court evaluated whether it had personal jurisdiction over Ira Rennert, a New York City resident and owner, chairman, and chief executive officer of three of the defendant companies and chairman of The Doe Run Resources Corp. *Doe Run*, 370 F. Supp. 3d at 1051. The court found that it had personal jurisdiction over Rennert because the lawsuit arose out of and related to his specific contacts with Missouri, including that Rennert negotiated contracts that filtered through Missouri "which related to the activities that caused Plaintiffs' damages," attended "numerous meetings in Missouri" to discuss the environmental cleanup at issue in the case, and approved and declined the funding and scheduling of the cleanup at issue. *Id*. at 1056.

The cases above bear no similarities to the present case. In the cases cited above, the individuals made multiple specific intentional overt acts within the states where the court found it had personal jurisdiction. Here, Plaintiffs have alleged that the Individual Defendants approved a nationwide policy regarding the participation of transgender individuals in USFA's competitions. *See generally* Doc. 1. Plaintiffs have not offered a single fact which describes an Individual Defendant's intentional and overt contact with the State of Missouri that relates to their claims.

7

*See Hanline v. Sinclair Glob. Brokerage Corp.*, 652 F. Supp. 1457, 1460 (W.D. Mo.) (a plaintiff must point to "specific facts linking actions of the individuals defendants to Missouri" and not mere "conclusory" and "bald[]" allegations); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d. 528 (1985) (the requirement of "purposeful availment" "ensures that a defendant will not be haled into a jurisdiction solely as the result of 'random,' 'fortuitous,' or 'attenuated' contacts' … or the 'unilateral activity of another party or third person'"); *Int'l Shoe Co. v. State of Wash., Off. Of Unemployment Comp. & Placement*, 326 U.S. 310, 319, 66 S. Ct. 154, 160, 90 L. Ed. 95 (1945) (personal jurisdiction does not exist over an "individual … with which the state has no contacts, ties, or relations"). Accordingly, Plaintiffs have offered nothing in their Response that might cause this Court to find that it has personal jurisdiction over the Individual Defendants. Therefore, the Individual Defendants respectfully request this Court to dismiss Plaintiffs' claims against them for lack of personal jurisdiction.

    **c.**    **Plaintiffs were required to bring their claims through the Ted Stevens Act and, because they failed to do so, this Court lacks subject matter jurisdiction.**

Regardless of the way in which Plaintiffs attempt to frame their claims to avoid dismissal based on lack of subject matter jurisdiction, they cannot escape the fact that Congress provided an exclusive statutory scheme through which they must bring their claims, *i.e.*, the Ted Stevens Act, and they failed to do so. The Supreme Court has held that a court cannot revise Congress's scheme simply because Congress did not affirmatively preclude the availability of other actions where a fair reading of the statutory text at issue displays an intent to foreclose that availability. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015). Where "a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies." *Sandoz Inc. v. Amgen Inc.*, 582 U.S. 1, 16 (2017).

As explained in Defendants' Motion to Dismiss, Congress, through the Ted Stevens Act, mandates that challenges to eligibility and the opportunity to compete in amateur sports competition are subject to the statutory dispute resolution rules of the Act. 36 U.S.C. § 220522(4)(b). Plaintiffs admit that their "claims arise from Defendants' eligibility policy" and they challenge "Defendants' policy permitting athletes assigned male at birth to compete in women's categories at the NAC and the conditions those policies create for female athletes." Doc. 25, pg. 12. Accordingly, Plaintiffs challenge their eligibility and opportunity to compete in amateur sports competition. Therefore, Congress required Plaintiffs to bring their claims through the Ted Stevens Act and, because Plaintiffs failed to do so, this Court lacks subject matter jurisdiction.

Plaintiffs offer a single case in support of their argument that this Court has subject matter jurisdiction over their claims of (1) violation of the MMPA; (2) breach of contract; (3) conspiracy; and (4) negligent misrepresentation/negligence per se. *Id*. In Plaintiffs' Response, they state that "as to state law claims, preemption depends on whether the claim directly conflicts with the ASA's purpose or unduly interferes with its operation" and cite *Minnesota Made Hockey, Inc. v. Minnesota Hockey, Inc.*, 789 F. Supp. 2d 1133, 1142 (D. Minn. 2011) to support their position. However, the court's holding in *Minnesota Made Hockey, Inc.* was specific to antitrust laws. See *Minnesota Made Hockey, Inc.*, 789 F. Supp. 2d at 1142 ('[t]he question for a court evaluating implied exemption based on the ASA is 'whether the application of the antitrust laws to the facts of this case would unduly interfere with the operation of the ASA"). No antitrust laws are at issue in this case. Therefore, this case does not offer any support to Plaintiffs' position. Defendants respectfully request this Court to dismiss all Plaintiffs' claims for lack of subject matter jurisdiction.

9

### d. Venue remains improper in this Court.

Plaintiffs attempt to reframe their claims to overcome Defendants' legal argument that venue is improper. Plaintiffs point to the fact that the January NAC was held in the State of Missouri and, therefore, venue is proper in this District. Doc. 25, pg. 20. However, as explained in Defendants' Motion to Dismiss, Plaintiffs' claims are based on USFA's Transgender Eligibility Policy and the implementation and enforcement thereof, and the Individual Defendants' association with USFA. *See generally* Doc. 1. This policy was enacted in the state of Colorado and enforced by and through USFA, which is a Colorado Nonprofit Corporation, incorporated and domiciled in Colorado. *Id*. at 3. Moreover, none of the Defendants reside in Missouri. *Id*. at 4. As stated in Defendants' Motion, this action could have and should have been brought in the District of Colorado. Therefore, Defendants respectfully request this Court to dismiss Plaintiffs' claims.

## II. CONCLUSION

WHEREFORE, for the reasons explained above and in Defendants' Motion to Dismiss and Memorandum in Support, Defendants request this Court enter an order dismissing Plaintiffs' Complaint in its entirety with prejudice and granting all other relief that is just and proper under the circumstances.

/s/ Blake M. Edwards
Vincent E. Gunter, MO #50343
Blake M. Edwards, MO #70755
Toni A. Martin, MO #KS-001246
GORDON REES SCULLY MANSUKHANI, LLP
2300 Main Street, Suite 900
Kansas City, MO 64108
Telephone: (816) 303-0815
Facsimile: (913) 945-1101
vgunter@grsm.com
bedwards@grsm.com
tamartin@grsm.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

    I hereby certify that on February 6, 2026, the above Reply in Support of Defendants' Motion to Dismiss was filed using the Court's electronic filing system which sent notice to all counsel of record.

                                                  /s/ Blake M. Edwards
                                                 Blake M. Edwards