# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

MARGHERITA GUZZI VINCENTI, et al.,    )
    Plaintiffs,    )
    )
v.    )    Case No. 4:25-CV-00850-FJG
    )
USA FENCING ASSOCIATION, at al.,    )
    Defendants.    )

## ORDER

Before the Court is Defendants' Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim (Doc. No. 14) filed on December 22, 2025. Defendants assert that this Court lacks personal jurisdiction over individual Defendants; that this Court lacks subject matter jurisdiction over Plaintiffs' claims; that Plaintiffs have failed to state a claim upon which relief can be granted; and that venue is improper.

## I.    THE PARTIES

Plaintiff Margherita Guzzi Vincenti is an individual residing in Hartland, Wisconsin, a member of Team USA who participated in the Senior Division I Women's Epee event in the January North American Cup ("NAC").

Plaintiff Patricia Hughes is an individual residing in Hilton Heads Island, South Carolina who participated in the Veteran Women's Epee event in the January North NAC.

Plaintiff Emma Griffin is an individual residing in Sugar Land, Texas, who participated in the Senior Division I Women's Foil event in the January NAC.

1

Defendant USA Fencing Association ("USFA") is a Colorado nonprofit membership organization located in Colorado Springs, Colorado. USFA is the national governing body ("NGB") for the Olympic and Paralympic Sport of fencing in the United States. Individual Defendants reside in different states and are members of the USFA board.

## II.  BACKGROUND

Plaintiffs filed this action on October 29, 2025 (Doc. No. 1) against USFA and individual Defendants. Plaintiffs are female fencers who allege that they were "…discriminated against, defrauded, and otherwise harmed by USFA and the individual defendants." Plaintiffs claim that this harm was a result of "…Defendants' false advertising of events as women's sporting competitions while intentionally permitting biological men to compete in those women-only events."

From January 3 to 6, the NAC was hosted by Defendant USFA in Kansas City, Missouri. Individual and team events were grouped by age, sex, and weapon. The age groups included Senior Division I, cadet (fencers under 16-years-old), adult veteran fencers, and parafencers. Plaintiffs allege that during the January NAC, Title IX of the 1972 Educational Amendment was violated when Defendants discriminated against "…biological women athletes and defrauded the Plaintiffs by falsely advertising women's events while at all times intending to include biological men in those women's events."

Defendant USFA had a policy since 2022 permitting athletes under the age of 16 (Cadet and younger divisions) to compete in women's fencing events regardless of their sex assigned at birth. This policy stated that "transgender and non-binary athletes competing in youth events are permitted to compete in the gender category with which they identify, without restriction." A separate rule allowed athletes who were under the age

2

of 16 to compete in the Cadet and Senior fencer divisions if they had accumulated enough national points. This means that, potentially, transgender athletes under the age of 16 could compete in Cadet and Senior fencer divisions.

Plaintiffs allege that because "USFA's youth and cadet policy authorized self-identification "without restriction" and lacked any verification mechanism, biological males under 16 were permitted and could have been expected, to compete in the women's events at the January 2025 NAC."

Defendant USFA also had a policy that allowed transgender female (MTF) athletes to compete in women's events only after completing 12 months of testosterone-suppression treatment and providing proof of compliant hormone therapy prior to a competition. Plaintiffs allege that "on information and belief, Defendant USFA never implemented any system to monitor or verify compliance with this requirement," allowing "biological males to register for and compete in women's events regardless of whether they completed any hormone-suppression treatment."

Defendant USFA's tournaments are categorized in men's and women's events which Plaintiffs allege is "false and misleading" because the women's category includes athletes assigned the sex of male at birth. Plaintiffs allege that the failure to disclose the inclusion of athletes assigned male at birth in women's events caused numerous fencers to register for events under the reasonable belief that the competitions were restricted to biological females. Plaintiffs further allege that "[p]articipants relied on these representations to their detriment and incurred costs associated with registration, travel, lodging, and participation in what they believed were sex-segregated events."

3

Plaintiffs allege several class action causes of action: violations of Title IX against Defendant USFA; false advertisement and violation of Missouri Merchandising Practices Act against Defendant USFA; breach of contract against Defendant USFA; conspiracy against all Defendants; and negligent misrepresentation and negligence per se against all Defendants.

## III. STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Fed. R. Civ. P. 12(b)(6)). Factual allegations in the complaint must be sufficiently alleged to raise a right to relief above the speculative level. *Bell Atlantic Corp., et al. Twombly*, 550 U.S. 544, 554-55, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). When ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the [nonmoving party]" and must also draw all reasonable inferences in favor of the nonmoving party. *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008) (citations omitted). However, the Court need not accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

## IV. ANALYSIS

### a. Personal Jurisdiction

In a motion to dismiss challenging personal jurisdiction, the plaintiff bears the burden of showing personal jurisdiction over the challenging defendant. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). A Court views the evidence in the light most favorable to the plaintiff, resolving any factual conflicts in the plaintiff's favor. *Id.*

Case 4:25-cv-00850-FJG    Document 31    Filed 05/20/26    Page 4 of 14

A federal court may only exercise personal jurisdiction over a non-resident defendant when "the defendant purposefully establish[es] 'minimum contacts' with the forum state such that asserting personal jurisdiction and maintaining the lawsuit against [them] does not offend 'traditional conceptions of fair play and substantial justice.'" *Hawkeye Gold, LLC*, 89 F.4th at 1032 (quoting *K-V Pharm. Co. v. J. Uriach & CIA, S.A.,* 648 F.3d 588, 592 (8th Cir. 2011)).

Personal jurisdiction may be exercised either through specific or general jurisdiction. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG,* 646 F.3d 589, 593 (8th Cir. 2011). An inquiry into specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, (1984)). To establish specific jurisdiction, the plaintiff must show that the defendants relationship arises out of contacts that the defendant created with the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985). Specific jurisdiction is proper "where the contacts proximately result from the actions by the defendant *himself* that create a 'substantial connection' with the forum state." *Keeton v. Hustler Mag., Inc.,* at 2183-84.

Defendants assert that Plaintiffs fail to establish that each individual defendant had contact with the State of Missouri and merely allege that Individual Defendants collectively authorized USFA to have contact with Missouri. Defendants further assert that Plaintiffs have not established that each individual defendant had the necessary minimum contacts, or any contact, with the State of Missouri and therefore, Individual Defendants should be dismissed.

Plaintiffs argue that the Court has specific personal jurisdiction over Individual Defendants because Plaintiffs' claims arise from their purposeful, forum-directed activities in Missouri. Plaintiffs state that corporate officers and board members are subject to personal jurisdiction for their own tortious or unlawful conduct undertaken in an official capacity. *Calder v. Jones,* 465 U.S. 783, 790 (1984). Plaintiffs claim that Individual Defendants personally participated in, approved, and implemented policies governing athlete eligibility, and these policies were applied to Missouri events and participants. Plaintiffs conclude that Defendants therefore purposefully directed their conduct at this forum and must reasonably anticipate being haled into court.

Multiple times, Plaintiffs state that individual Defendants authorized USFA to take actions but not that individual Defendants had contacts, ties, or relations with the state of Missouri. Plaintiffs also state that Individual Defendants have engaged in tortious conduct by personally approving and implementing the challenged policies.

The Court finds that Plaintiffs have not sufficiently alleged how Individual Defendants had contacts, ties, or relations with the state of Missouri or any tortious conduct they have engaged in. Despite viewing the evidence in Plaintiff's favor, this Court finds no support allowing it to exercise personal jurisdiction over Defendants.

b. Subject Matter Jurisdiction: Ted Stevens Act and Title IX Claim

"The 'Ted Stevens Olympic and Amateur Sports Act' (the "Act") 36 U.S.C. § 220501, *et seq.*, creates a vertical structure for the management of certain amateur sports in the United States." *Hale v. McGregor*, No. 1-24-CV-1076-RP, 2025 U.S. Dist. LEXIS 151470* (citing *Eleven Line, Inc. v. N. Texas State Soccer Ass'n, Inc.*, 213 F.3d 198, 203 (5th Cir. 2000)). The head of this structure is the U.S. Olympic Committee ("USOPC"),

6

followed by the national governing bodies ("NGBs") for each sport in the Olympic or Pan-American games. *Id*. A NGB is required to demonstrate its autonomy in the governance of its sport… in that it: (A) independently decides and controls all matters central to governance; (B) does not delegate decision-making and control of matters central to governance; and (C) is free from outside restraint. 36 U.S.C.A. § 220522 (5)(A)-(C). The Act also allows governing bodies to "establish procedures for determining eligibility standards for participation in competition…" *Id.* at § 220523(a)(6).

Defendants assert that their Transgender Eligibility Policy was a procedure for determining eligibility for participants competing in USFA events and therefore falls under the broad authority established by the Act. Defendants further assert that Plaintiff may only seek judicial review of a determination after Plaintiff has exhausted the administrative remedies under the act and that the Act does not create a federal cause of action. *See* 36 U.S.C. § 220529(a) and *Hale v. McGregor*, 2025 U.S. Dist. LEXIS 151470*, at *10.

Plaintiffs argue that the Act "does not contain any express preemption clause that would bar Plaintiffs' claims against USA Fencing," and therefore this Court is not deprived of jurisdiction. Doc. No. 25 at 9. Plaintiffs also state the courts have recognized that the Act "does not preempt federal statutes prohibiting… discrimination." *Pliuskaitis v. USA Swimming, Inc.*, 243 F. Supp. 3d 1217, 1226 (D. Utah 2017). Plaintiffs claim that their Complaint does not concern Plaintiffs' eligibility to compete but rather Defendants' policies for transgender athletes—Plaintiffs claim that the crux of their case "is about the composition of the competition, safety, fairness, and Defendants' failure to disclose material facts to participants." *Id.* at 12.

The Court agrees that the Act "does not nullify or supersede other *federal* laws that provide private rights of action to ensure freedom from discrimination." *Lee v. United States Taekwondo Union*, 331 F. Supp. 2d 1252, 1260 (D. Haw. 2004); *see also Pliuskaitis*, 243 F. Supp. 3d at 1226; *Shepherd v. United States Olympic Comm.*, 464 F. Supp. 2d 1072, 1088 (D. Colo. 2006).

To the extent that Plaintiffs are "…invoking protections afforded to [them] under federal civil rights laws independently of and in addition [to] rights governed exclusively by the [Act]," their claims are not preempted. *Id.* (quoting *Lee*, 331 F. Supp. 2d at 1260-61. Therefore, this Court does not lack subject matter jurisdiction over Plaintiff's Title IX claims.

c. <u>Failure to State a Claim: Title IX</u>

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Civil Rights Restoration Act of 1987 defines a "program or activity" to include "all of the operations of . . . a college, university, or other postsecondary institution, or a public system of higher education . . . any part of which is extended Federal financial assistance." 20 U.S.C. § 1687(2)(A).

The Eighth Circuit applies Title VII standards for proving discriminatory treatment under Title IX. *Kelley v. Iowa State Univ. of Sci. & Tech.*, 311 F. Supp. 3d 1051, 1068 (S.D. Iowa 2018). *See also Rowles v. Curators of Univ. of Missouri*, 983 F.3d 345, 360 (8th Cir. 2020).

Plaintiffs Complaint states that since 2022 and up until August 1, 2025, Defendant USFA has allowed transgender (MTF) athletes above 16 years old to participate in women's events if those athletes have sustained one year of testosterone suppression treatment. Plaintiffs claim that this creates inherent physical disparities, increases safety risks, and deprives female athletes of fair competition and equal opportunity.

Plaintiffs refer to *R.M.A. v. Blue Springs R-IV Sch. Dist.*, 717 S.W.3d 187 (June 10, 2025) which was determined months after the competition, and Executive Order 14201—Keeping Men Out of Women's Sports—which was also enacted after the competition had taken place. In Plaintiffs' reply, they also acknowledge that transgender individuals are entitled to Title IX protections and that they don't allege that transgender athletes should be excluded from athletic participation. Plaintiff's reply also states that they allege facts supporting a plausible inference that Defendants' policy treated female athletes differently because of sex—Plaintiffs do not state whom female athletes were treated differently from.

Plaintiffs have failed to allege that they were excluded from or denied the benefits of the competition because of their gender. Plaintiffs have not even alleged facts supporting that they competed against transgender athletes. Plaintiffs have not pled that they were treated adversely because of their gender. Plaintiffs allege that they were treated differently because of their gender but have not alleged from whom they were treated differently or in what way. Plaintiffs have failed to state a claim upon which relief can be granted. Therefore, Plaintiff's Title IX claims are dismissed.

     d.  <u>State Law Claims</u>

The Act also requires NGBs to "submit to binding arbitration in any controversy involving…the opportunity of any amateur athlete, coach, trainer, manager… to participate in amateur athletic competition, upon demand of the corporation or any aggrieved amateur athlete, coach, trainer…" *Id*. at § 220522 (4)(B),(8). Several courts have found that the Act preempts state law causes of action that seek relief governed by the Act. *See Lee* 331 F. Supp. 2d at 1260-61.

Plaintiffs' state law claims include (1) violation of the Missouri Merchandise Purchasing Act ("MMPA"), (2) breach of contract, (3) conspiracy, and (4) negligent misrepresentation/negligence per se.

### i. Missouri Merchandise Purchasing Act ("MMPA")

The MMPA prohibits the act or use of "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material facts in connection with the sale or advertisement of any merchandise in trade or commerce … in or from the state of Missouri, is declared to be an unlawful practice." Mo. Ann. Stat. § 407.020. Plaintiffs must establish (a) that they acted as a reasonable consumer would in light of all circumstances; (b) that the method, act, or practice declared unlawful would cause a reasonable person to enter into the transaction that resulted in damages; and (c) individual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty. *Id*.

Defendants argue that Plaintiffs' Complaint does not adequately allege how the information provided by USFA was false, deceptive, or misleading to a reasonable

10

consumer. Defendants further argue that Plaintiffs have not adequately pled that they suffered an "ascertainable loss of money or property."

Plaintiffs contend that a reasonable consumer attending this athletic competition would consider it material whether the event included "biological males" competing in the women's categories. Plaintiffs also argue that they have adequately alleged an ascertainable loss—registration fees, travel and lodging expenses, and purchased equipment—and that they were deprived of their ability to make an informed decision.

Plaintiffs have not adequately pled that they suffered an "ascertainable loss of money or property," because they concede that they (1) participated in the January NAC events and (2) and never allege that they were unaware of Defendant USFA's policy that was enacted in 2022.[1] Plaintiffs' allegations fail to state a claim for which relief can be granted because "[f]actual allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. Additionally, for Plaintiffs to prevail under a MMPA claim, their loss should be a result of the defendant's unlawful practice. *Plubell v. Merck & Co.*, 289 S.W.3d 707, 714 (Mo. App. W.D. 2009). USFA did not engage in any unlawful practices. USFA's Transgender Eligibility Policy was implemented pursuant USFA's authority as an NGB.

Additionally, while Plaintiffs attempt to suggest that their case "is about the composition of the competition, safety, fairness, and Defendants' failure to disclose material facts to participants," Plaintiffs' claims are indeed about the eligibility of

---

[1] Bryan Wendell, *USA Fencing Implements Transgender And Nonbinary Athlete Policy*, USA Fencing (Nov. 7, 2022), https://www.usafencing.org/news/2022/november/07/usa-fencing-implements-transgender-and-nonbinary-athlete-policy.

transgender athletes to participate in USFA competitions. Therefore, Plaintiffs MMPA claim was preempted by the Act.

Plaintiffs' MMPA claim is dismissed because it is insufficiently plead and because it was preempted by the Act.

ii. <u>Breach of Contract Claim</u>

To establish breach of contract, "the complaining party must establish the existence of a valid contract, the rights of plaintiff and obligations of defendant under the contract, a breach by defendant, and damages resulting from the breach." *Lucero v. Curators of the Univ. of Mo.,* 400 S.W.3d 1, 5 (Mo. Ct. App. 2013). A claim for breach of contract requires, (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff. *Reed v. Curators of the Univ. of Mo.,* 509 S.W.3d 816, 823 (Mo. Ct. App. 2016).

Defendants claim that Plaintiffs failed to allege essential elements of a breach of contract, that Plaintiffs and Defendant USFA were in a contractual relationship, the basis of that relationship, or damages flowing from the purported contractual relationship. Defendants also state that Plaintiffs admit that they participated in the January NAC event and don't know whether they competed against any transgender participants.

Plaintiffs argue that they have plausibly alleged the existence of a contract between themselves and USFA, that Defendants failed to abide by USFA's own mission statement and bylaws in administration of the competition, and that they have adequately alleged damages.

12

The Court finds that Plaintiffs have not alleged the essential elements for a breach of contract; they have failed to sufficiently plead what contracts exists between the parties and how they were violated. Plaintiff's Breach of Contract claim is based on Defendants' purpose and tax status—which required Defendants to comply with Title IX and not discriminate against transgender individuals. *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 657. Plaintiffs have failed to state a claim upon which relief can be granted.

Furthermore, Plaintiffs' contractual claims are indeed about the eligibility of transgender athletes to participate in USFA competitions. Therefore, Plaintiffs' breach of contract claim was preempted by the Act. The Court dismisses Plaintiffs Breach of Contract Claim against Defendant USFA.

### iii. Civil Conspiracy Claim

"A civil conspiracy is an agreement or understanding between persons to do an unlawful act, or to use unlawful means to do a lawful act." *Gibson v. Brewer,* 952 S.W.2d 239, 245 (Mo. Banc 1997). To properly allege a civil conspiracy, Plaintiffs must show: (1) two or more people; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and that (5) Plaintiffs were thereby damaged. *Amesquita v. Gilster-Mary Lee Corp.*, 408 S.W.3d 293 (Mo.App. 2013).

"There can be no cause of action for conspiracy in the absence of an underlying wrongful act or tort." *M.W.*, 539 S.W.3d at 915; *Misischia*, 30 S.W.3d at 864. If the "tortious acts alleged as elements of a civil conspiracy claim fail to state a cause of action, then the conspiracy claim fails as well." *Western Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 22 (Mo. banc 2012) (quoting *Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d 777, 781 (Mo. banc 1999)). "[T]he plaintiff must allege with particularity and specifically demonstrate

13

with material facts that the defendants reached an agreement." *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 685 (8th Cir. 2012). "Conclusory allegations of conspiracy fail to state a claim." *Brown v. Dills,* No. 05–4414–CV–C–NKL, 2007 U.S. Dist. LEXIS 2960* (W.D.Mo. Jan. 12, 2007) (citing *Snelling v. Westhoff,* 972 F.2d 199, 200 (8th Cir.1992)).

Plaintiffs Conspiracy claim fails as a matter of law because they have failed to adequately allege an underlying tort. Furthermore, Plaintiffs allegations fail to rise above speculation and are vague and conclusory. Plaintiffs Conspiracy claim is dismissed.

### iv. Negligent Misrepresentation/Negligence Per Se

Because the Court has dismissed the underlying MMPA claim and Plaintiff's Negligent Misrepresentation/Negligence Per Se claim is based on that claim, the Court hereby dismisses this claim.

## V. CONCLUSION

Plaintiff has given this Court no compelling reasons why Defendants' Motion to Dismiss for Failure to State a Claim (Doc. No. 14) should not be granted. Therefore, Defendants' Motion to Dismiss (Doc. No. 4) is **GRANTED,** and this cause is **DISMISSED without prejudice**.

**IT IS SO ORDERED**.

Date: <u>May 20, 2026</u>
Kansas City, Missouri

**S/ FERNANDO J. GAITAN**, **JR.**
Fernando J. Gaitan, Jr.
United States District Judge