| | |
|---|---|
| DISTRICT COURT, EL PASO COUNTY, COLORADO<br><br>270 S. Tejon Street<br><br>Colorado Springs, CO 80903 | |
| Plaintiff(s): ANDREY GEVA, ABDEL SALEM as directors, derivatively on behalf of the USA FENCING, a Colorado nonprofit corporation,<br><br>v.<br><br>Defendant (s): USA FENCING and DAMIEN LEHFELDT, MOLLY HILL, KAT HOLMES, LAURYN DELUCA, JACKIE DUBROVICH, ANDREA PAGNANELLI | |
| Attorneys for Plaintiffs:<br>Attorneys: Alan D. Sweetbaum #13491<br>Sweetbaum Miller PC<br>Address: 1200 Seventeenth Street, Suite 1250<br>Denver, Colorado 80202<br>Phone No.: (303) 296-3377<br><br>Email: asweetbaum@sweetbaumLaw.com | Case Number:<br><br><br><br>Division: |
| **VERIFIED DERIVATIVE COMPLAINT** | |

Plaintiffs, At-Large Director Andrey Geva (" Plaintiff Geva") and At-Large Director Abdel Salem ( "Plaintiff Salem "), by and through their undersigned counsel, submit their Verified Complaint ( "the Complaint") derivatively on behalf of nominal defendant USA Fencing Association ( "USFA"), against, the Chair, Defendant Damien Lehfeldt ( "Defendant Lehfeldt"), At-Large Director, Defendant Molly Hill ( "Ms. Hill"), Athlete Director, Defendant Kat Holmes ("Ms. Holmes"), Athlete Director, Defendant Lauryn Deluca ("Ms. Deluca"), Athlete Director, Defendant Jackie Dubrovich (" Ms. Dubrovich"), Defendant Andrea Pagnanelli ("Ms. Pagnanelli") and allege as follows:

1

## Introduction

1.       This is a derivative action brought by Plaintiffs Andrey Geva and Abdel Salem, on behalf of the United States Fencing Association ("USFA"), to address a pattern of serious misconduct by its Chair, Defendant Lehfeldt and in coordination with other individual Defendant USFA Board (the "Board") members and in violation of the Bylaws of the USFA. The illegal actions and misconduct by the individual Defendants include, *inter alia*,: (1) Defendant Lehfeldt's false statement in a congressional hearing and his alienation of thousands of members through untruth that risk USFA being decertified as a national governing body and negatively affect Team USA in the 2028 Los Angeles Olympics; (2) Defendant Lehfeldt's false announcement of Plaintiff Geva's resignation to the Board; (3) threats and efforts by Defendants to deter Plaintiff Geva from providing Congressional testimony, to interfere with ongoing Congressional, federal and state government investigations; (4) an ambush censure motion against Plaintiff Geva by Defendants during a Special Board Meeting and their improper silencing of Plaintiffs Geva and Salem all in violation of the Bylaws; (5) conflicts of interest involving independent directors participating in action that violates the Bylaws of the USFA; (6) mandated vendor ties and promotional dealings with Gallagher Affinity and other individuals; (7) suppression of Board deliberation and debate; (8) restricted financial oversight and denied directors' access to essential financial records;  (9) unauthorized use of directors' name in fundraising communications and a broader lack of transparency in organizational practices, and (10) amendment of the Bylaws that deprives and suppresses members' voting rights in bad faith.

2.       As a result of this, Defendant Lehfeldt, Ms. Hill, Ms. Holmes, Ms. Deluca, Ms. Dubrovich, and Ms. Pagnanelli breached their fiduciary duties, including the duties of loyalty, care and good faith. Defendant Lehfeldt failed to address or disclose material conflicts of interest. Mr.

Lehfeldt, Ms. Hill, Ms. Holmes, Ms. Deluca, and Ms. Dubrovich conspired to silence Plaintiffs Geva and Salem, and to orchestrate the removal of Plaintiff Geva from the Board. As a result, USFA has suffered significant injuries that include, but not limited to, reputational harm to the Board and its members, loss of critical governance rights and governance breakdown, loss of member support, financial losses, loss of donor confidence and support, and risk of being decertified as a national governing body. Plaintiffs seek the removal of the current Chair of the Board Defendant Lehfeldt, Ms. Hill, Ms. Holmes, Ms. Deluca, Ms. Dubrovich, and Ms. Pagnanelli, an injunction to prevent the improper removal of Plaintiff Geva, an injunction to prevent the amendment to the Bylaws that deprives and suppresses members' voting rights, an order to conduct judicial auditing of USFA from 2022, and an order barring Defendant Lehfeldt from seeking or holding any Board position within the USA Fencing for a period of five years.

## THE PARTIES

3. Plaintiff Andrey Geva ("Plaintiff Geva") is an adult individual residing in 1446 Scenic Ridge Drive, Houston, TX 77043 and currently serves as an At-Large director on the USA Fencing Board.

4. Plaintiff Abdel Salem ("Plaintiff Salem") is an adult individual residing in 15280 Churchill PL Colorado Springs, CO 80921 and currently serves as an At-Large director on the USA Fencing Board.

5. USA Fencing ("USFA") is a Colorado nonprofit membership corporation with its principal office located at 210 USA Cycling Point Colorado Springs, Colorado, United States. USA Fencing is named solely as a nominal defendant for purposes of this derivative action.

6. Defendant Daimen Lehfeldt ("Defendant Lehfeldt") is an adult individual residing in 6222 Berlee Dr, Alexandria, VA 22312-1224 and currently serving as the Chair on the USA Fencing Boar

7. Defendant Molly Hill is an adult individual residing in 39 Encline Ct, San Francisco, CA 94127-1836 San Francisco and currently serves as an At-Large Director on the USA Fencing Board.

8. Defendant Kat Holmes is an adult individual residing in 300 W 110th St. Apt 17F New York, NY 10026-4056 and currently serves as an Athlete Director on the USA Fencing Board.

9. Defendant Lauryn Deluca is an adult individual residing in 320004 N Marginal Dr Apt 132, Willowick, OH 44095, Lake County and currently serves as an Athlete Director on the USA Fencing Board.

10. Defendant Jackie Dubrovich is an adult individual residing in 19 Ridgewood Ter, Maplewood, NJ 07040-2132, and currently serves as an Athlete Director on the USA Fencing Board.

11. Defendant Andrea Pagnanelli is an adult individual residing in 14 Conselyea St Apt 4. Brooklyn, NY 11211-2202, and currently serves as an Independent Director on the USA Fencing Board.

**JURISDICTION AND VENUE**

12. This Court has jurisdiction over the parties and the subject matter of this action pursuant to C.R.S. §13-1-124, because Defendants are either residents of Colorado, have transacted business within the state of Colorado, and/or the Defendants, or each of them, have committed business acts in the course of business within the state of Colorado.

4

13. Venue is proper in the District Court for El Paso County, Colorado pursuant to C.R.C.P. 98 (c), because as the principal office of nominal Defendant USA Fencing (United States Fencing Association) is located in Colorado Springs, Colorado, within this County, at 210 USA Cycling Point, Colorado Springs, Colorado.

14. USA Fencing is incorporated under the laws of Colorado as a nonprofit corporation and maintains its primary business operations within this jurisdiction.

15. Plaintiffs bring this derivative action on behalf of USA Fencing to redress breaches of fiduciary duty, conflict of interest, and other misconduct by current Defendant directors, who have caused and are continuing to cause substantial and irreparable injury to the organization. As such, the claims arise from conduct by Defendants occurring, at least in part, within the State of Colorado.

## FACT ALLEGATIONS

16. USA Fencing ("USFA") is the national governing body (NGB) for the Olympic and Paralympic Sport of fencing in the United States.

17. Plaintiff Geva is a distinguished fencing coach and a member-elected of USA Fencing, serving his four-year terms beginning from Sept.1, 2024 to 2028. Before becoming At-Large Director, from 2013 to 2021, he was the coach of the Team USA who led the U.S. Women's Épée National Team to historic international success, including World Championship and World Cup gold medals and Olympic leadership in Rio and Tokyo.

18. Plaintiff Salem is a distinguished fencer and fencing coach and a member-elected At-Large Director of USA Fencing, serving his second four-year terms beginning from Sept.1, 2023 to 2026. In addition to his achievement as an Olympian and member elected director for two

terms, Dr. Salem served as the head coach of the U.S. Air Force Academy's fencing team and was awarded the U.S. Olympic Committee Coach of the year in 1996.

19. The two Plaintiffs represent 50% of member-elected USFA board directors.

20. Defendant Lehfeldt is the Chair of the Board of Directors for USA Fencing, having been elected by his fellow board members in September 2024. His term is set to run through September 1, 2025, with the possibility of reelection.

21. Phil Andrews ("Mr. Andrews") is the Chief Executive Officer of USA Fencing, appointed in August 2022.

22. Kate Reisinger ("Ms. Reisinger") is the Chief of Sport Performance of USA Fencing.

23. Defendant Molly Hill is an At-Large Director not elected by members, Defendants Kat Holms, Lauryn Deluca, and Jackie Dubrovich are Athlete Directors appointed by USFA Athlete Council where the membership does not have any participation or knowledge, Defendant Pagnanelli is an Independent Director nominated and appointed by the other Defendants.

### *Defendant Lehfeldt's False Statements That Risk USFA's NGB Status*

24. USFA's certification as the national governing body ("NGB") for the Olympic and Paralympic Sport of fencing in the United States is of paramount importance and it is certain among its best interest to maintain such a status.

25. Defendant Lehfeldt's non-corporative demeanor in bad faith and untruthful and misleading statements at the congressional hearing on May 7, 2024 has prompted the Congress to consider decertify USFA as an NGB, thus potentially risk Team USA's qualification in the 2028 Los Angeles Summer Olympic Game.

26. Defendant admitted in the congressional hearing that he falsified an email from a fictitious fencing mother "Dorothy" who disagreed with him and called those members with similar view of "Dorothy" "grand wizard" of Ku Klux Klan in his pretentious reply to this non-existent fencing mother. His lies have alienated thousands of members in the fencing community who have provided more than 90% of USFA's revenue.

27. USFA is membership organization with a sole purpose of promoting fencing sport in the United States. Defendant Lehfeldt's intentional lies are directly against the organization's best interest. He nevertheless manufactured those lies and published them in social media intentionally, maliciously, and in bad faith against USFA's best interests.

### Defendant Lehfeldt's False Announcement of Director Geva's Resignation to the Board

28. This particular fact began in earnest in October 2024, when Defendant Lehfeldt attempted to force Plaintiff Geva out as a Board member without notice and without cause in violation of the Bylaws.

29. On or about October 28, 2024, Plaintiff Geva was offered a "co-head coach" position for the Men's Epee National Team. On or about October 28, Mr. Andrews emailed to Plaintiff Geva, copying Ms. Reisinger, and Athlete Safety & Compliance Manager Christina Pachuta ("Ms. Pachuta"). In this email, Mr. Andrews stated that Ms. Reisinger had asked Mr. Andrews to "write to talk about the next steps," and informed Plaintiff Geva that Plaintiff Geva could not "continue on the Board and be Head Coach". Mr. Andrews acknowledged that Ms. Reisinger had already conveyed this directive to Plaintiff Geva.

30. Mr. Andrews referenced Plaintiff Geva's previously announced intention to raise certain motions at an upcoming Board meeting in December, 2024. Mr. Andrews suggested that, to facilitate this, the Board Chair, Defendant Lehfeldt, could sponsor the motions, and Plaintiff

7

Geva might be invited to the December Board meeting to present them. Mr. Andrews stated that Defendant Lehfeldt would be reaching out to Plaintiff Geva from a Board perspective.

31. Plaintiff Geva intended to present and did present in USFA's December board meeting the following motions to (1) paly national anthem at all national competitions, (2) ban political protest at the podium, (3) replace the DEIB office to an office of grass root development. While Plaintiff Salem openly expressed his support to Plaintiff Geva's motions, all defendants voted nay to all of those motions. Defendant Lehfeldt went so far as to repeatedly demand the Plaintiffs to "read the room" and "not to present those motions."

32. On the same day Mr. Andrews emailed Plaintiff Geva, Defendant Lehfeldt emailed every member of the USA Board falsely announcing that Plaintiff Geva had decided to resign from the Board to become the Men's Épée National Coach. He also wrote "please join me in thanking Andrey for his brief service to the Board."

33. However, this statement was false and Defendant Lehfeldt knew it to be false. Plaintiff Geva had not announced any decision to resign. He had also made it clear to Defendant Lehfeldt that he was considering whether to take the coach position and if there were any issues.

34. The next day, Plaintiff Geva emailed all USA Fencing Board Directors and the National Office staff, expressing surprise and dismay at the email sent to the Board members by Defendant Lehfeldt. Plaintiff Geva explained that he had not resigned and did not intend to resign from the Board, affirming that he had been elected by the members and had a fiduciary duty to the USFA.

35. Plaintiff Geva stated that he had been offered a co-coaching position with the national épée team, but he had not accepted the position and was still evaluating it.

8

36.     Plaintiff Geva stated after receiving the offer, he had received several calls urging him to resign due to an alleged potential conflict of interest. He acknowledged the concerns but explained that he had spoken to legal counsel and that he understood that there was no general conflict and that any theoretical or potential conflict could be managed by recusal from specific votes, rather than resignation.

37.     On the same day, Defendant Lehfeldt responded via email to Plaintiff Geva's statement, admitting that they had spoken for 30 minutes prior to the October 28th email, the announcement of resignation. During this 30-minute phone call, Defendant Lehfeldt exerted high pressure on Plaintiff Geva and told him at least three times that Plaintiff Geva should resign. Plaintiff Geva told Defendant Lehfeldt that he intended to stay on as a board member.  In addition, Plaintiff Geva told Defendant Lehfeldt he wanted to present his motions to the Board to fulfill his promises to the fencing community. Defendant Lehfeldt continued to forcefully ask for Plaintiff Geva's resignation and offered that he would submit Plaintiff Geva's motion if latter agreed to resign.

38.     Defendant Lehfeldt said his chief concern about the conflict of interest was that if Plaintiff Geva served as both a board member and Men's Épée Head Coach, he would simultaneously supervise and be subordinate to the CEO. He apologized if Plaintiff Geva felt his concern seemed like a personal attack, emphasizing that Geva has consistently exemplified ethical conduct and leadership throughout his career.

39.     Lehfeldt then went on to state that if Plaintiff Geva declines the national coaching role to remain on the Board, it benefits the Board members on this email chain but would be a big loss for the Men's Épée team and the national office.

40. On November 3, 2024, Defendant Lehfeldt emailed Plaintiff Geva, copying the entire USA Fencing Board of Directors. Defendant Lehfeldt noted that trust has two dimensions: competence and integrity. While mistakes of competence can be forgiven, those of integrity are harder to overcome. Defendant Lehfeldt acknowledged and apologized for prematurely notifying the Board that Plaintiff Geva intended to resign. He admitted it was a major mistake and characterized it as his first major error as Chair and asked Plaintiff Geva to accept his apology.

41. On November 4, 2024, Director Geva responded to Defendant Lehfeldt's apology via email, copying the entire USA Fencing Board. Plaintiff Geva accepted the apology. However, he emphasized the importance of preventing similar situations in the future and requested that the matter be discussed at the next Board meeting.

42. Defendant knowingly falsified Plaintiff Geva's resignation and he did so in gross disregard of the truth and in bad faith trying to silence directors having different opinions. Unfortunately, this was not the end of Defendant Lehfeldt's improper and unlawful actions towards Plaintiffs Geva and Salem.

*Threats and Efforts to Deter Plaintiff Geva's 2025 Congressional Testimony*

43. On March 30, 2025, fencer Stephanie Turner protested by kneeling and refusing to compete against transgender athlete Redmond Sullivan, leading to her black card and disqualification by the USFA.

44. This incident has caught national and international media attention and resulted in a Congressional hearing by the DOGE Committee.

45. While Defendant Lehfeldt has been the one who constantly communicating with certain member group and on the social media, for reasons unbeknownst to the Plaintiffs, on April 5, 2025, Defendant Lehfeldt texted the following messages to the Board Chat Group, stating that

10

"working session was supposed to be confidential, but someone has chosen to disrespect our privacy. Such disregard for keeping our discussion in-house has a destructive chilling effect on open conversation and breeds distrust among a group that should strive for cohesiveness. I beg everyone to take the heat without fanning the flames. We need to pull together and let all messaging come through official channels. Individual Board members are not official channels and can only make things worse by appearing to speak officially."

46. Defendant Pagnanelli also texted to all board members the following message: "Board, as someone who has sat on multiple boards, to have a leak of information is highly disappointing. We are a sport organization that promotes teammate, integrity, and honesty. It seems the leaker is likely one of two people. I joined this board for a clear why. I want to remind everyone our allegiance is not to FFO but USA fencing and this board. We are one team. Andrea"

47. FFO stands for Fair Fencing Organization, a nonprofit organization founded by fencers, coaches, referees and fencing parents to promote fairness, transparency, and professionalism in the fencing sport. Plaintiff Geva served as a board director of FFO before he became board director of USFA. Defendants Lehfeldt and Pagnanelli targeted Plaintiffs Geva and Salem without any basis.

48. Feeling the media pressure resulted from the Stephanie Turner incident and the upcoming Congressional Hearing, during the subsequent Board working session in April, Defendant Lehfeldt stated that there were at least two Board members leaking information. He brazenly threatened the plaintiffs, "If I find out who is doing this, that person(s) will be removed from the Board."

49. While Defendant Lehfeldt has been the one communicating to certain membership group, media, and on social media, he intentionally and falsely blamed other directors for his own

deed and demand "duty of unity" on board members. Similarly, without any factual basis, Defendant Pagnanelli acted in concert with Defendant Lehfeldt in bad faith.

50. On April 14, 2025, the Subcommittee on Delivering on Government Efficiency (DOGE) invited Defendant Lehfeldt, Chairman of the Board of the USFA, to appear for a hearing on May 7, 2025, to examine the participation of transgender women in biologically women's sports. Despite receiving this invitation, Defendant Lehfeldt refused to testify voluntarily. As a result, the Committee issued a subpoena to compel his testimony.

51. Plaintiff Geva was approached by Senator Ted Cruz's office, asking for his opinion on this issue. On May 2, 2025, Plaintiff Geva submitted a personal statement on his experience and opinion on biological men's advantage over women in fencing to the office of Sen. Ted Cruz. This statement was not being made on behalf of USFA. Sen. Ted Cruz's office shared Plaintiff Geva's letter with the DOGE Committee, which was referred to by Chairwoman Rep. Marjorie Taylor Greene on May 7, 2025, during the Congressional Hearing titled *"Unfair Play: Keeping Men Out of Women's Sports"*.

52. Defendant Ms. Holmes immediately sent a text message to Plaintiff Geva during the hearing, blaming him for his honest personal opinion and joined Defendants Ms. Hill, Ms. Deluca, and Ms. Dubrovich to call for Special Board Meeting intended to remove or otherwise discipline Plaintiff Geva.

53. The Defendants already had knowledge that Senator Ted Cruz and Texas Attorney General had stated that they are investigating USFA. The Defendants also knew that USFA was under an ongoing congressional investigation. The Defendants knew that the Department of Justice and Department of Education had publicly stated that they were looking into the issues. The

Defendants, by threatening the Plaintiffs, were interfering with and sabotaging those government investigations.

54. Because the Defendants constitutes a plurality of the board, their interference and sabotage could result in the organization being decertified as a national governing body and even criminally charged. Such a risk will put the fencing sport in great danger and directly run afoul of USFA's nest interest and its organizational purpose: to promote the fencing sport.

*Ambush Censure and Silencing of Directors*

55. On that same day as Congressional Hearing, Defendant Ms. Hill notified the Board via email of a request to convene a Special Meeting. She cited Bylaw Section 7.11(a), which permits four or more Board Members to call such a meeting with at least ten days' notice and requires a stated purpose.

56. Ms. Hill stated she would act on behalf of herself and fellow Board Members Athlete Director Jackie Dubrovich, Athlete Director Kat Holmes, and Athlete Director Lauryn DeLuca in formally requesting a Special Meeting of the Board of Directors.

57. The meeting was scheduled for Saturday, May 24, 2025, at 4:00 p.m. Pacific / 7:00 p.m. Eastern. In accordance with the Bylaws, she also stated that an agenda would be distributed to the full Board no later than May 19, 2025, purportedly to comply with the five-day notice requirement.

58. The Agenda of May 24th shows Special Meeting USA Fencing Board of Directors May 24,2025, in Section II New business: MOTION 1 (Ms. Holmes): "**To enter Executive Session to discuss Board conduct and external board communications**" (emphasis added).

Case 4:25-cv-00850-FJG    Document 33-5    Filed 06/03/26    Page 13 of 43

59. On May 24, 2025, a Special Board Meeting conducted via video conference. It was attended by Plaintiffs and Defendants. The entire meeting constituted an ambush on Plaintiff Geva and intentional violation of his rights and Plaintiff Salem's rights and the Bylaws.

60. Defendant Board members intentionally muted Plaintiff Salem before the voting started and ignored his repeated requests to be unmuted.

61. As soon as the meeting started, a formal motion, which was not in the board meeting agenda, was introduced by Defendants Ms. Holms and seconded by the Defendant Directors censuring At-Large Director Plaintiff Geva for allegedly violating his fiduciary duties. This censure, apparently written by a lawyer outside of USFA board, accused Plaintiff Geva of allegedly acting contrary to the organization's best interests, undermining its policies, and risking its standing as a national governing body.

62. The motion cited Plaintiff Geva's submission of a statement to a Congressional Committee investigating USA Fencing, in which he took a position that the Board characterized as contrary to its official policy. It is further alleged that he failed to notify or obtain approval from the CEO or Director of Communications before engaging in external communication, thereby breaching so called "established" protocol.

63. The censure also claimed that Plaintiff Geva had failed to provide the requested information to USA Fencing's legal counsel related to governmental inquiries. Before this special board meeting, Plaintiff Geva's legal counsel asked USFA's legal counsel on what legal authority USFA demanded Plaintiff Geva's statement to the Senate. USFA's legal counsel failed to provide any legal basis for Plaintiff Geva's counsel.

64.     The motion concluded by warning that repetition of such acts could lead to removal proceedings and declared that any breach of the private nature of the censure would itself be grounds for further disciplinary action.

65.     The motion, discussion and censure took Plaintiff Geva completely by surprise. He had never seen it in advance of the meeting and it was not identified or listed on the agenda as required by Bylaws section 7.11(b). Plaintiff Geva asked when and where this motion of baseless accusation had been introduced, as it had not appeared in any board documentation or agenda prior to the meeting. No one answered him.

66.     When Plaintiff Geva realized that this special board meeting was intended to ambush him and initiate a plot to remove him, he moved to bring his legal counsels to the meeting in accordance with the Bylaws and USFA General Counsel's prior email communication with Plaintiffs' legal counsel. Although the board was on notice from Plaintiff Geva's counsel that he was represented, the board denied his motion and his rights to legal representation.

67.     When Plaintiff Geva attempted to speak up in his defense regarding the improper removal of directors, Defendant Ms. Hill asked him to recused himself from the room and USFA's general counsel told Plaintiff Geva that he did not need to recused but need to "shut up." No director, other than the Plaintiffs, objected to these actions.

68.     In his preliminary response, Plaintiff Geva denied that his testimony was a breach of fiduciary duty and that his actions put USA Fencing at risk of decertification. As the public Congressional hearing clearly shows, the Board's refusal to cooperate with Congressional oversight and Defendant Lehfeldt's representation of USFA and his untruthful statements before Congress jeopardized the organization. It was Defendant Lehfeldt that the Congress called to resign and it was Lehfeldt's response to the Congress prompted congressional concerns about

15

decertifying USFA. Plaintiff Geva maintained that a more balanced and respectful response to Congress, such as acknowledging the issue and working toward a solution, would serve the organization's best interest, would have defused tensions and prevented USA Fencing from being painted in a negative light.

69.     While the Defendants acted without any respect to Plaintiff Geva and relevant Bylaw provisions, they nevertheless falsely accused Plaintiff Geva as being disrespectful. Plaintiff Geva stated that his conduct reflected his duty to speak up when ethical or governance concerns arise and was entirely consistent with the Board's own charter and Bylaws and his fiduciary duty to the organization. He emphasized that differing views do not equate to disrespect and reiterated that he was fulfilling his responsibility to represent all USA Fencing members—not personal factions or views.

70.     Consistent with Defendant Lehfeldt's false announcement of Plaintiff Geva's resignation, Defendants Lehfeldt's and Pagnanelli's prior baseless accusation, and their hostile demeanor in silencing the Plaintiffs, the Defendants' actions in excessive haste in calling a special board meeting designed to ambush Plaintiff Geva and concealing the real purpose of this special board meeting evidence their bad faith and gross negligence.

### *Independent Directors' Conflict of Interest in Board Voting*

71.     Prior to these incidents, there were conflicts of interest involving independent directors at USFA. On or about September 10, 2024, Plaintiff Geva emailed Mr. Peter Barton (USFA's Parliamentarian), with Mr. Donald Alperstein (non-voting special board member of USFA) copied, inquiring: (1) whether two independent directors, whose two-year replacement terms expired on August 31, 2024, were still eligible to vote in the upcoming September 13, 2024, board meeting in Salt Lake City, Utah; (2) if they are eligible to vote, whether it raised a conflict

of interest while the Board voting on major personnel decision, such as electing the Board Chair and new independent directors.

72. Plaintiff Geva observed that given (i) the Chair nominates the candidates for independent director positions, and (ii) the current independent directors are potential nominees themselves, that their participation in these votes seems to be a conflict of interest.

73. Plaintiff Geva stated that his intention was merely to highlight a potential issue and seek clarification prior to the upcoming meeting.

On the same day, Mr. Alperstein acknowledged this was a potential technical conflict of interest but stated it was up to the individuals and ultimately the Board to address it.

74. On or about September 10, 2024, Mr. Barton replied to Plaintiff Geva that there might be a potential conflict of interest but this kind of situation—where political dynamics influence votes—has been around for a long time (even as far back as the Roman Senate).

Mr. Barton then stated that it was up to each Independent Director to assess whether their situation created a serious enough conflict to require stepping back from the vote (i.e., recusing themselves). If a director chooses not to recuse, that decision is still generally seen as defensible.

75. On or about September 12, 2024, Plaintiff Geva followed up with a legal analysis, noting that for question 1, he understood that all current independent directors are eligible to vote in general. For question 2, he understood both Mr. Alperstein and Mr. Barton had acknowledged the existence of a conflict of interest in the situation.

76. Plaintiff Geva asserted that the independent directors with their term expired on August 31, 2024 had a direct personal interest and should abstain from voting on the election of chair, because Robert's Rules of Order states that "no member should vote on a question in which he has a direct personal or pecuniary interest not common to other members of the organization."

77. Plaintiff Geva listed an example, a certain director (in fact, Defendant Lehfeldt) running for the Chairman had been openly endorsing certain independent directors for another term, because the Chair alone has authority to nominate independent directors for a new term, a current independent director who is not nominated has no path to be approved by the Board.

78. Plaintiff Geva raised the third question whether independent directors vote to extend/appoint independent directors for the new term. Plaintiff Geva asserted that the answer was no given that under Robert's Rules, directors must recuse themselves from voting when they have a conflict of interest - which is defined as financial or personal considerations that may unduly influence judgment, or an interest not shared by other directors.

79. Plaintiff Geva asserted that the Chair and independent directors are "interested persons" and should recuse themselves from voting on the reappointment of independent directors. Robert's Rules further requires such the interested directors to "leave the meeting room so the remaining directors can freely discuss and vote on the issue. If the interested directors were to stay in the meeting, their presence could inhibit the board's discussion and influence the vote. To avoid liability, directors with a personal interest must remove himself from the process of conferring and voting on matters in which they have a personal interest."

80. On or about September 13, 2024, Mr. Barton responded to Plaintiff Geva's asserted conflicts of interest, stating that recusal is a matter for each director to evaluate individually, based on their assessment of whether a conflict exists.

81. Despite Plaintiff Geva's reasoning, all the Board directors with conflicts of interest voted and none recused. Under the Defendants control, the Board has been engaging in circular voting where people with personal interest voted for each other.

***Suppression of Board Deliberation***

82. On December 10, 2024, in the name of "meeting efficiency," Defendant Lehfeldt emailed the USFA Board with confidential results from a straw poll conducted ahead of the December board meeting.

83. Based on the straw poll responses, Defendant Lehfeldt indicated that most of the meeting and debate time would be allocated to motions identified as having a "Moderate" chance of passing. For motions deemed to have a high or low likelihood of passing, the process will be expedited: the movant will be allowed to present the motion, followed by a brief period for comments from supporting or opposing members. Defendant Lehfeldt then specifically asked the Plaintiffs to "read the room" and withdraw their motions, before the Plaintiffs had any chance to present their motions and the board had any deliberation of those motions.

84. During the December 14, 2024 Board meetings, Defendants Lehfeldt, Ms. Hills, and Mr. Pagnanelli frequently used the phrase "read the room" many times when member-elected directors Plaintiff Geva, Plaintiff Salem, or Ms. Panyi were making presentations on motions that were apparently not in line with the Defendants' position. Defendant Lehfeldt further abused his role as the chair and only allowed 30 seconds for the Plaintiffs to present their motion and frequently interrupted the Plaintiffs during the board meeting in the most disrespectful and unprofessional way.

85. On or about December 4, 2024, Ms. Panyi emailed her concerns to Defendant Lehfeldt's position that Board members should withdraw motions unlikely to pass. Ms. Panyi disagreed with Defendant Lehfeldt about withdrawing such a motion because of the Board's fiduciary responsibility and its duty to represent the wishes of members and the best interests of the organization. Ms. Panyi further pointed out that the so-called "likelihood of pass" was not

19

conduct with any meaningful deliberation of the motion and merely a personal feel by certain directors.

86.     She emphasized that even contentious motions offer valuable insights and help improve governance. While the Board should ensure efficiency, it also has a duty to shape policy, guide management, adhere to the Bylaws, and protect the organization's finances. She concluded that balancing efficiency with inclusive, thoughtful discussion shows commitment to the Board's responsibilities and the voices of its members.

87.     Defendant Lehfeldt insisted on his tactics to silence dissenting directors anyway. In total disregard of corporate governance and the Bylaws, Defendant Lehfeldt in the essence required the board to subject its decision to his personal determination before board directors had a chance to present and debate on important agendas.

### *Restricted Financial Oversight and Denial of Board Access to Financial Records*

88.     On or about July 29, 2024, Plaintiff Salem emailed Defendant Lehfeldt requesting that the Board's treasurer Ms. Emily Bian and at least one member of the Board have access to all financial and bank statements and reports.

89.     On the same day, Defendant Lehfeldt responded that Ms. Bian said that she did not need access to those information as she already had the requisite information from USFA's finance director Tabitha Chamberlin ("Ms. Chamberlin"). However, Board members like the Plaintiffs do not have access to a complete bank or financial report. Such a lack of financial transparency has significantly hampered the board's ability to fulfill its fiduciary duty and act in the best interest of the organization.

90. The Board has been presented proposed budget in short notice for approval without financial transparency as the Defendants vote as a cluster will constitute a majority and thus ensure the passage of any budget, even other Board members have been denied of financial transparency.

91. The Defendants knew or should have known that the Internal Revenue Service has strict requirement for a nonprofit organization to maintain its tax exempted status. They nevertheless abused their sheer voting power in gross negligence to disregard corporate governance and financial transparency and accountability, prevent the Board from making informed decision in the best interest of the organization and thus risk the organization being disqualified as a nonprofit organization.

### *Financial Conflicts of Interest with Vendors and Appointment of Committee Members*

92. USFA's Board established various committees to manage this organization. The Board appoints committee members based on recommendation of the Nominating Committee chaired by Defendant Ms. Dubrovich with Defendants Ms. Pagnanelli and Ms. Holmes being committee members.

93. USFA's Ethics Committee assessed individuals and companies based on whether they had a direct financial interest in, or other personal benefits from their relationship with, USA Fencing. Individuals were placed into one of three categories: 1) No Conflicts, 2) Very Minor Conflicts, 3) Moderate Conflicts, where moderate conflicts included situations where individuals and companies are directly involved in beneficial business relationships with USA Fencing.

94. On or about December 27, 2024, Plaintiff Salem raised the issue of conflicts of interest to other Board members. After examining whether an individual was in a position in which they could have direct financial gain or some sort of personal benefit from USFA, the Ethics Committee concluded and formally notified the Board the following individuals as having

moderate conflicts of interest: Donald Anthony, David Blake, Brandon Rochelle, Dan Berke, Brian Rosen as they all conduct various businesses and/or financial transactions with USFA.

95. Due to their conflicts of interest, Plaintiff Salem asserted that they should not be considered to assume important roles in various committees. Defendants ignored the Ethics Committee's findings, considered these conflicts not disqualifying for the individuals, and appointed all the above mentioned individuals to important committee positions with direct conflicts of interest. For example, Dan Berke was appointed to the Tournament Committee where all USFA sanctioned tournaments are using Dan Berke's software Fencing Time Live on subscription fee basis.

96. Similar conflict of interest exists with USFA's insurer Gallagher Affinity. While all USFA member clubs are required by USFA to purchase insurance from this company and, at the same time, USFA has been using its member clubs for this insurance company to market its appliance sales to USFA's members. For example, Ms. Sue Mohebi, the owner and head coach of Ace Fencing Academy raised this issue and Plaintiff Salem brought it to the board attention. The Defendants have been quick to dismiss any conflicts of interest concerns on individuals and businesses they consider as friendly, even after the Ethics Committee concludes and confirms conflicts of interest.

### *Unauthorized Use of Directors' Name in Fundraising and Lack of Transparency*

97. USFA and its affiliated USA Fencing Foundation have been fraudulently using coaches' name without those coaches' authorization or even knowledge to raise funds and using the proceeds raised NOT for its stated purpose. USFA conducted a fundraising campaign titled "Give Back to the Coach Who Has Given You So Much" while coaches were not informed.

Athletes thought this fundraising was for the benefit of their coaches. However, the proceeds of this fundraising were not used for coaches.

98. On 10/24/2024 Plaintiff Salem emailed the USA Fencing Board members that he received an email with certification that some of his students' donations were made in his name. Plaintiff Salem never authorized such use of his name and was not aware of such fundraising activity until after the fact. He requested details about the donors and donation amounts and to this day he has not received a response.

99. USFA CEO Mr. Andrews responded that he believed Plaintiff Salem spoke to his colleague Jordan Cook (Ms. Cook) during the Louisville NAC. Ms. Cook already informed Plaintiff Salem that, where a donor asks to donate privately, they may not release the information of that donor.

100. Plaintiff Salem replied that he did not attend Louisville NAC, and he did not speak to Ms. Cook. Mr. Andrews did not address his concern. Defendant Lehfeldt responded to Plaintiff Salem that this (falsely using coaches' name) was "not predatory." Defendant Ms. Hill replied that "Please remove the Board alias from any further replies on this.

101. Neither the amount of this fundraising nor the use of the proceeds have been transparent to the donors, coaches or the Board members like the Plaintiffs.

102. The Defendants knew or should have known that, as a nonprofit organization, USFA must follow requirements of Internal Revenue Service in its fundraising and use of proceeds. They knew or should have known that it is in USFA's best interest to maintain its nonprofit status by observing all statutory and regulatory requirements, the violation of which could result in USFA's disqualification of nonprofit status. However, when Plaintiff Salem raised his concern

about the fundraising irregularities, Defendant Lehfeldt simply declared it "not predatory" and all other Defendants acquiesced, failing to act in the organization's best interest.

### *Deprivation and Suppression of Members' Voting Rights in Bad Faith*

103.    On June 7, 2025, Defendant Hill, in conspiracy with other Defendants, has tried to circumvent members' representation in the Board by amending the Bylaws to reduce the number of member-elected director from 5 to 4, making self-petitioning to be a Board candidate nearly impossible, and changing the chair qualification from member-elected directors to any directors.

104.    Under the current Bylaws, any Bylaws change will have a 45-day commenting period. On June 3, 2025, in an open Q&A session, when asked how many members need to voice their opposition against the proposed Bylaws change, Defendant Lehfeldt blatantly stated that [the board] will stay in the course no matter how many members are against the amendment.

105.    Under the amendment, Board candidates will be nominated by a Nominating Committee under Defendant Hill's control. Self-petitioning path to be Board candidate will need 600 signatures, a 600% increase from the current Bylaws requirement, and 4% of USFA clubs, a 200% increase from the current Bylaws.

106.    Defendants knew that all clubs are local in nature, most clubs have 10 to 200 members, many of them are minors. It is nearly impossible to collect 600 signatures from voting members across from the nation.

107.    The Defendants controlled Nominating Committee nominated many candidates in the past elections, 90% of those candidates were not defeated in elections. During the past elections, none of the Plaintiffs were nominated. When they petitioned to run for the Board directors, the Nominating Committee and Defendant Lehfeldt tried to dissuade them from running. Both Plaintiffs won the election over candidates nominated by the Nominating Committee.

108. On information and belief, especially Defendants' falsified resignation of Plaintiff Geva and their constant silencing of the Plaintiffs, this Bylaws amendment was designed against members' voting rights and a bad faith attempt to suppress members' voting power.

109. The Defendants know that USFA is a membership organization with 90% of its revenue coming from its members. However, they have viewed concerns raised by the Plaintiffs as a threat. Such an attempt to circumvent the members' voting rights will discourage members' participation in the sport and works against the organization's best interest.

## DERIVATIVE CAUSES OF ACTION

## DEMAND EXCUSED UNDER C.R.S. 7-126-401

110. Pursuant to C.R.S. § 7-126-401(3), as set forth above and herein, pre-suit demand on the Board for the claims asserted herein has been excused for reasons of futility. The facts demonstrate that none of the Defendants would have taken action based on these complaints.

111. In fact, Defendants acted to censure and silence Plaintiff Geva for raising these complaints and silence Plaintiff Salem in Board meetings. For example, on or about May 24, 2025, during a Special Board Meeting conducted via video conference on the topic of Board conduct and external communications, the Board members intentionally muted Plaintiff Salem right before voting started, despite his repeated requests to be unmuted.

112. During the same meeting, once it commenced, the Board announced "lawyered up" accusations for the removal of Plaintiff Geva without any discussion. Plaintiff Geva was denied counsel and when Plaintiff Geva attempted to speak in his own defense regarding the improper removal of directors, Defendant Ms. Hill demanded his recusal and USFA's general counsel told him to "shut up.". No director, other than the Plaintiffs, objected to these actions and Plaintiff Salem's objection was muted. Similarly, when Plaintiff Geva submitted his motion to remove

25

Defendant Lehfeldt, at least Plaintiff Salem was muted so that Plaintiff Geva's motion was defeated without any director second it.

113. Therefore, The Board's coordinated efforts to suppress the Plaintiffs' ability to participate and defend themselves demonstrates that any demand for corrective action for the matters complained of in this complaint would have been futile and therefore excused under the statute.

114. Similarly, conduct of the independent directors in failing to recuse themselves from the vote extending their term demonstrates that any demand for corrective action would have been futile.

**FIRST CLAIM FOR RELIEF**
**BREACH OF FIDUCIARY DUTY**
**(COLO. REV. STAT. § 7-128-401, et seq.)**

115. Plaintiffs reallege and incorporate by reference the allegations stated in paragraphs 1 through 114 above as if stated here in full.

116. Pursuant to the C.R.S. § 7-128-401, each of the individual Defendants owed USFA fiduciary duties, including the duties of good faith, care and loyalty.

117. Defendant Lehfeldt and the other Defendants materially breached these fiduciary duties by the actions and inactions described above, including 1) Defendant Lehfeldt's false statements in the Congressional hearing and his alienation of thousands of members through untruth that risk USFA being decertified as a national governing body and negatively affect Team USA in the 2028 Los Angeles Olympics; 2) Defendant Lehfeldt's false announcement of Plaintiff's Geva's resignation to the Board; 3) Defendant Lehfeldt's threats during the Board meeting "if let me find out…, I will remove him", Defendant Pagnanelli's threat and baseless accusation of the Plaintiffs' leaking confidential information, and other Defendants' threats and

26

effects to deter Plaintiff Geva from providing Congressional testimony, and to interfere with ongoing Congressional, federal and state government investigations;" 4) Replace the statutory fiduciary duty with Defendants' mandate of "duty of unity" and prohibit dissenting directors' fulfillment of fiduciary duty. Defendant Holmes' efforts to illegally deter Plaintiff Geva's statement and exercise of free speech during the Congressional hearing as protected under the U.S. Constitution and other federal laws; 5) the Defendant Board members' intentionally muting Plaintiff Salem during the special board meeting and ignoring his repeated requests to be unmuted; 6) the Defendant Board members' improperly agreeing in advance to bring a motion and agree to its substance in advance to censure Plaintiff Geva without proper notice and intentionally concealing the agenda in advance of the meeting so as to deprive Plaintiffs of the opportunity to respond, all in violation of the Bylaws and the procedures required thereunder; 7) The nominal defendant USFA's general counsel also acted in gross disregard of a lawyer's ethics by telling Plaintiff Geva to "shut up" and preventing him from speaking in defense of the wrongful allegations of breach of fiduciary duty, with full knowledge that Plaintiff Geva was represented by counsel; 8) Ignored conflicts of interest involving independent directors participating in circular election that violates the Bylaws of the USFA; 9) Disregarded Ethics Committee's finding of conflicts of interest by appointing individuals with direct financial conflicts of interest in important committee positions and mandated vendor ties and promotional dealings with Gallagher Affinity with full knowledge that there exist conflict of interest between those individuals/company and USFA; 10) Restricted financial oversight and denied directors' access to essential financial records such that the directors could not make informed decisions for the best interest of the organization; 11) Unauthorized use of director's name in fundraising and lack of transparency; and 12) Attempted in bad faith to amend the Bylaws to deprive and suppress members' voting rights.

*Misrepresentation*

118. Defendant Lehfeldt breached his duty of care, loyalty, and good faith by conducting himself in a non-cooperative demeanor and making false and misleading statements at the above mentioned congressional hearing, falsifying stories to attack members with hatred language on social media, thereby putting USFA under national and international media crisis, damaging USFA's reputation, risking USFA's most valuable asset – its status as a national governing body, losing members' confidence in USFA in general, and causing a chilling effect on the fencing sport as a whole. Defendant Lehfeldt has and continues to cause harm to USFA through his conducts and statements.

119. Defendant Lehfeldt breached his duty of care to USFA. On or about October 28, 2024, falsely announced to the full Board that Plaintiff Geva had decided to resign from his Board position to be men's épée Head Coach even if before annunciation.

120. As alleged above, Defendant Lehfeldt knew that that this was false or made the statement in reckless disregard of its truth. Lehfeldt later admitted to Plaintiff that it was a major error on his part.

121. This action was *ultra vires*. Defendant Lehfeldt knew that he had no authority whatsoever to announce the resignation of Plaintiff Geva.

122. Defendant Lehfeldt attempted to force the resignation of a duly elected director without cause or procedural compliance. This action was done in bad faith and was grossly negligent. His action disregarded the Board's collective authority, and his attempt to push out a vocal director during a politically sensitive moment constitutes a clear breach of the duty of loyalty owed to the organization.

123. Defendant Lehfeldt further breached his fiduciary duty of loyalty to USA Fencing by failing to protect its governance framework and placing his own personal or political motivations above the best interests of the organization and its members.

### *Threats and Efforts to Deter Plaintiff Geva's Congressional Testimony*

124. Defendants Lehfeldt and Holmes breached their fiduciary duties under C.R.S. § 7-128-401 by retaliating in bad faith against Plaintiff Geva for his lawful communication with a Congressional Committee. These improper actions damaged USFA as a whole.

125. In this regard, on May 2, 2025, Plaintiff Geva submitted a statement to the U.S. Senate Committee on Commerce, which was cited during the May 7, 2025, hearing titled "Unfair Play: Keeping Men Out of Women's Sports." This action was not taken as representing USFA without authorization but in Plaintiff Geva's personal capacity as an expert coach, although it might have a positive annotation to demonstrate certain possibility that USFA might be able to seriously consider its policy and improve its accountability during a time while the organization is facing a national crisis.

126. Immediately following acknowledgment of Plaintiff Geva's statement at the hearing, Defendant Holmes texted Plaintiff Geva and accused him of violating his fiduciary duty, reflecting her own hostility toward transparency and Board accountability. Plaintiff Geva responded professionally and constructively, offering to discuss the matter and reiterating his belief that his actions served the best interests of USA Fencing. Ms. Holmes' message and her timing and the timing of Geva's censure by ambush orchestrated by the Defendants also show retaliatory intent by Holmes and the other Defendants.

127.     Additionally, on April 5, 2025, Defendants Lehfeldt and Pagnanelli accused unnamed Board members in a WhatsApp message of leaking confidential information, claiming it harmed trust and the Board's ability to function. During a subsequent Board meeting, he escalated the matter by threatening removal of any director identified as a source of leaks, saying: "If I find out who is doing this, that person(s) will be removed from the Board." These threats, paired with the later backlash to Plaintiff Geva's congressional testimony, form a pattern of suppressing internal dissent and punishing directors who engage in external oversight, which violated the Defendant Directors' duties of care, loyalty, and good faith. Defendants' conduct bordered on interference with congressional, federal and state investigation, tampering with witnesses, and potentially risking the organization with civil and perhaps even criminal liability.

### *Ambush Censure and Silencing of Directors*

128.     USFA Bylaws 7.11(a) requires that the written request state the reason for the meeting and USFA Bylaws 7.11 (b) states that business not mentioned in the agenda may not be acted on at a special meeting unless a majority of the Directors than in office vote to consider the matter.

129.     On May 7, 2025, Defendant Ms. Hill, on behalf of herself and Defendants Ms. Dubrovich, Ms. Holmes, and Ms. DeLuca, requested a Special Board Meeting of USFA's board of directors. The posted agenda listed the topic for the special meeting as: "To enter Executive Session to discuss Board conduct and external board communications." The agenda, however, was devoid of any information that would suggest or hint to Plaintiffs that there would be any motions to reprimand, censure or discipline anyone. Based upon his prior hostile actions towards

Plaintiff Geva, it is also believed that Defendant Lehfeldt was acting in concert with these Defendants.

130. Despite this glaring lack of notice, during the May 24th Special Board Meeting Defendants made a motion to censure Plaintiff Geva for an alleged breach of fiduciary duty. The lack of notice and violation of the Bylaws by Defendant Lehfeldt and the other Defendants was intentional and meant to deprive the minority voices of the Board of their ability to prepare and respond and take advantage of procedures in the Bylaws.

131. Upon information and belief, all the individual Defendants had met via phone or videoconference or had otherwise communicated in coordinated fashion prior to the issuance of the request for the Special Board Meeting and had already discussed and agreed to censure Plaintiff Geva before the May 24th Special Board Meeting and had agreed that they would prevent him from knowing what the Board meeting was actually going to be about and to prevent him and Plaintiff Salem from adding anything of substance. This belief is grounded upon such facts as (i) that the agenda was devoid of relevant information to put Plaintiffs Geva or Salem (or a reasonable person) on notice to allow them to prepare for the motion; (ii) the speed at which the motion for censure was introduced at the meeting and the well "lawyered up" language used which was way beyond a medical student's vocabulary (Ms. Holmes); and (iii) the refusal to permit Plaintiff Salem to speak at the special meeting. Based upon these same facts, upon information and belief, the lack of notice to Plaintiffs by Defendants was intentional and done in bad faith and in violation of the Bylaws.

132. During the same meeting, Plaintiff Salem was intentionally muted by Defendants and denied any opportunity to participate in the most substantive discussions and any vote. Similarly, when attempting to respond to the motion, Plaintiff Geva was denied legal counsel,

silenced and told to "shut up" by USFA's legal counsel who has taken side with Defendants and who had full knowledge that Plaintiff Geva was represented by counsel. None of the Defendant directors objected to these silencing tactics, reflecting their assent in the actions to suppress Plaintiffs and a deliberate effort to suppress dissent and manipulate and violate Board procedures and the Bylaws.

133. By engaging in the above, the individual Defendants, Mr. Lehfeldt, Ms. Hill, Ms. Holmes, Ms. DeLuca, Ms. Dubrovich breached their fiduciary duties of care and loyalty and acted in bad faith.

### *Conflicts of Interest in Committee Member Appointment and Mandated Vendor Ties and Promotional Dealings with Gallagher Affinity*

134. Gallagher Affinity is a specialized division of Arthur J. Gallagher & Co., primarily focused on providing tailored insurance services. It is inherently problematic for a company mandated to provide insurance to all affiliated clubs to simultaneously engage in unrelated commercial activities, such as appliance sales.

135. Following an internal review, several individuals - Donald Anthony, David Blake, Brandon Rochelle, Dan Berke, and Brian Rosen - were identified by USFA's Ethics Committee as having moderate conflicts of interest, defined as direct involvement in businesses that maintain mutually beneficial relationships with USA Fencing.

136. Despite being notified of these conflicts, Defendant Lehfeldt and other Defendants completely disregarded the disclosed conflicts of interests and led the Board in approving those individuals for important committee positions with direct conflict of interest. Similarly, the Defendant-led board approved Gallagher Affinity as a mandated vendor for both insurance and appliance-related promotions. In doing so, Mr. Lehfeldt and other Defendants breached their

fiduciary duty to act in the best interests of the organization and to avoid actions that compromise governance integrity.

*Unauthorized Use of Director's Name in Fundraising and Lack of Transparency*

137. Defendant Lehfeldt has fostered a lack of transparency regarding fundraising. On or about October 24, 2024, Plaintiff Salem emailed the USA Fencing Board members and Don Anthony that he had become aware that some of his students' donations were made in his name. He had not solicited those donations.

138. Accordingly, Plaintiff Salem requested details about the donors and donation amounts but did not receive a response. He also stated that using his name for fundraising without his consent is inappropriate.

139. Despite his reasonable requests, Defendant Lehfeldt and USFA did not provide any information to Plaintiff Salem regarding this fundraising that used his name without consent.

140. As a direct and proximate result of these breaches by the individual Defendants, USFA and its members have suffered and will continue to suffer harm.

**SECOND CLAIM FOR RELIEF**
**BREACH CONTRACT AGAINST**
**ALL INDIVIDUAL DEFENDANTS**
**AND USFA (nominally)**

141. Plaintiffs reallege and incorporates by reference the allegations stated in paragraphs 1 through 140 above as if stated here in full.

142. The Bylaws of USFA constitute an enforceable agreement. The individual Defendants each agreed to abide by those Bylaws. USFA has the obligation to enforce its own Bylaws.

143.    In addition, each of the individual Defendants had agreed to certain rules that would govern any conflict of interest involving them or any member of USA Fencing. The rules named "Conflict of Interest Policy Adopted March 9, 2023" ("Conflict of Interest Policy")

144.    USFA's Bylaws and its Conflict of Interest Policy represent valid and enforceable contracts between USFA and its members, which is binding on both parties. The parties entered this contract when the individual defendants joined USFA as a member or as a director.

145.    All conditions precedent to the enforcement of Plaintiffs' rights have been met or otherwise satisfied.

146.    Section 7.5 of USFA's Bylaw provides that "No person shall be qualified for selection or service as an officer or Director of the USFA except upon execution of a writing acceding the following statement: 'As [Chair of the Board] [Treasurer] [Special Board Member] [Director] [other] of the United States Fencing Association I agree and undertake ….to avoid conflicts of interest as outlined in the Conflict of Interest Policy of USA Fencing…… I pledge to devote …. ability in good faith to advance …integrity and betterment of the United States Fencing Association'."

147.    Section 1 of the Conflict of Interest Policy provides that " A Conflict of Interest or Conflict exits when a Decision Maker acts individually, or as part of USA Fencing or in connection with a transaction to which USA Fencing is a party, where the Decision Maker's actions or relationships present the potential for improper personal gain or advantage, or for an adverse effect on the interest of USA Fencing, or where the Decision Maker's actions or relationships create the appearance that the Decision Maker may not be able to put USA Fencing's interest first."

148.    Section 4 of the Conflict of Interest Policy provides that "At each Board and Committee meeting, members shall disclose all potential conflicts of interests with subjects on the

meeting agenda. All disclosed potential conflicts of interests shall be included in the meeting minutes as well as members who recuse themselves due to an actual or apparent conflict of interest."

149. Section 4 of the Conflict-of-Interest Policy provides that "……if any board…. has a good faith belief that a Decision Maker has a conflict of interest that has not been disclosed, that party should notify USA Fencing's General Counsel and the Ethic Committee for resolution…. If the matter is referred to the General Counsel and to the Ethics Committee and involves a transaction between USA Fencing and a Decision Maker (or a family member or business in some way related to a Decision Maker) the Ethics Committee shall decide if a conflict of interest exists pursuant to Section 5 below, and if there are mitigating measures that could be implemented to permit USA Fencing to move forward with the transaction or activity."

150. Section 5 of the Conflict of Interest Policy provides that " If a possible conflict of interest exists and is referred to the General Counsel and Ethics Committee with respect to a proposed transaction, promptly and before any decision is made regarding the proposed transaction, the proposed transaction shall be addressed as follows: 1) The interested person may make a presentation to the Ethics Committee, which may be convened telephonically, regarding the transaction or arrangement involving the possible conflict of interest. 2) The Ethics Committee shall review alternatives to the proposed transaction or arrangement if presented to the Ethics Committee by the Board of USA Fencing, staff, or relevant committee. 3) After reviewing the presented information, the Ethics Committee shall inform the Board of USA Fencing or committee whether there is a conflict of interest precluding USA Fencing from entering into the transaction or arrangement, or if there are mitigating measures that may be implemented to alleviate concerns regarding the potential conflict of interest."

151. The USFA's Bylaws and the "Conflict of Interest Policy Adopted March 9, 2023" constitute a valid and enforceable contract between USFA and its directors, including Defendant Lehfeldt. Section 7.5 of the Bylaws requires all directors to affirmatively pledge to avoid conflicts of interest and act in good faith to promote the integrity and interests of USA Fencing. Similarly, Sections 1, 4, and 5 of the Conflict of Interest Policy impose a binding duty to disclose potential conflicts, to notify the Ethics Committee and General Counsel if an undisclosed conflict is suspected, and to refrain from participating in decisions where an individual has a personal interest or where impartiality is compromised.

152. Despite these clear obligations, Defendant Lehfeldt failed to recuse himself or disclose his direct personal interest on September 13, 2024, Chair election—an election in which his own candidacy was at stake. Importantly, both Special Board Member Donald Alperstein and Parliamentarian Peter Barton explicitly acknowledged in their responses to Plaintiff Geva that the situation presented a potential conflict of interest. However, neither initiated the review procedures required by the Conflict of Interest Policy, nor did they take any action to refer the matter to the Ethics Committee or General Counsel. Their failure to act allowed the conflict to persist unchecked, undermining the integrity of the process.

153. Rather than addressing or mitigating the conflict, Defendant Lehfeldt promised certain expiring independent directors to extend their tenure, those directors proceeded to vote in the Chair election, Lehfeldt was elected, and in return nominated those who voted for him, and thereby benefited from his own participation in a matter in which he had a personal interest. This conduct constituted a material breach of both his contractual obligations and his fiduciary duties under **C.R.S. § 7-128-401**, which require directors to act in good faith, with loyalty, and in the best interests of the organization.

154. In addition, the individual Defendants failed to comply with the Bylaws when they set the special meeting in May 24, 2025 as set forth in detail in Paragraphs 158-169 below.

155. As a direct and proximate result of these breaches by the individual Defendants, USA Fencing has suffered harm to its governance rights and governance integrity, confidence in its election process, the enforceability of its internal conflict-of-interest safeguards and reputational harm.

**THIRD CLAIM FOR RELIEF**

**CONSPIRACY AGAINST THE INDIVIDUAL DEFENDANTS**

156. Plaintiffs reallege and incorporate by reference the allegations stated in paragraphs 1 through 155 above as if stated here in full.

157. A Board member can only be removed "for cause" under the USFA Bylaw Section 10.2.

158. Defendants Lehfeldt, Hill, Holmes, Deluca, and Dubrovich unlawfully conspired against Plaintiff Geva and Plaintiff Salem by lying about their motive to coordinate a request for a special board meeting on discussing Congressional Hearing, however, featuring a surprise initiation of removal motion to remove Plaintiff Geva--an item deliberately not included in the distributed agenda, muting Plaintiff Salem during the board's deliberation and voting and breaching the USFA's Bylaws in the process.

159. Prior to meeting on May 7, 2025, upon information and belief, Defendants Mr. Lehfeldt, Ms. Hill, Ms. Holmes, Ms. Deluca, and Ms. Dubrovich had agreed amongst themselves to remove Plaintiff Geva from the Board without cause, so as to silence him and quash his views. Their first step in that process was to rush a motion to censure Plaintiff Geva and not allow him a chance to speak or Plaintiff Salem a chance to speak.

160. This belief is grounded upon such facts as (i) that the agenda was devoid of relevant information to put Plaintiffs Geva or Salem (or a reasonable person) on notice to allow them to prepare for the motion; (ii) the speed at which the motion for censure was introduced at the meeting; (iii) the "lawyered" up accusation that was clearly drafted by an attorney, not Ms. Holms, who is a medical student with no legal training, and (iv) the refusal to permit Mr. Salem to speak at the special meeting.

161. Upon information and belief as set forth above, Defendants Lehfeldt, Hill, Holmes, Deluca, and Dubrovich sought to force Geva's departure by surprising him with a baseless allegation of breach of fiduciary duty, grounds for which they knew did not exist or should have known did not exist. This was achieved through a breach of the Bylaws.

162. Defendants Lehfeldt, Hill, Holmes, Deluca, and Ms. Dubrovich also coordinated and intentionally concealed the true purpose of requesting a Special Board Meeting on May 24, 2025.

163. Under the USFA's Bylaw 7.11 (a) requires that the written request state the reason for the meeting and USFA's Bylaw 7.11 (b) states that business not mentioned in the agenda may not be acted on at a special meeting unless a majority of the Directors than in office vote to consider the matter

164. Defendants Defendant Lehfeldt, Ms. Hill, Ms. Holmes, Ms. Deluca, and Ms. Dubrovich were aware of and also intentionally concealed from Plaintiffs the true purpose for the May 24,2025 Special Board Meeting.

165. Upon information and belief, the above individual Defendants intentionally omitted the material fact that they had already discussed and were going to move to censure Plaintiff Geva and agreed that Ms. Hill should omit the specific reason from the agenda. The email

requesting the Special Board Meeting stated that the purpose was to debrief the recent Congressional hearing. However, the posted agenda listed the topic as: "To enter Executive Session to discuss Board conduct and external board communications." Despite this, during the meeting, a motion was introduced to censure Plaintiff Geva for an alleged breach of fiduciary duty—an action not disclosed in the original meeting request or agenda. They are all inconsistent with each other.

166. The illegal nature and purpose is reflected by the fact that there was no discussion prior to the motion being made and the repeated efforts to mute Plaintiff Salem at that meeting time.

167. At all times material hereto, Defendant Lehfeldt had a personal stake in seeking to force Plaintiff Geva out as a director and in illegally attempting to stifle Plaintiff Salem. That personal interest included his interest in not being disciplined for his violations of the Bylaws or called out for allowing conflicts of interest and being forced out of his own position as a Director.

168. At all times, the actions by the individual Defendants in setting the meeting to censure Geva and moving to censure Geva were *ultra vires* and in contravention of the Bylaws of USAF.

169. As a direct and proximate result of these unlawful actions and breaches by the individual Defendants Lehfeldt, Hill, Holmes, Deluca, and Dubrovich actions in furtherance of their conspiracy to remove Plaintiff Geva in violation of the Bylaws, USFA and its members have suffered and will continue to suffer irreparable harm in the absence of injunctive relief.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ANDREY GEVA and ABDEL SALEM respectfully request that this Court issue a preliminary and permanent injunctive relief and other relief against Defendants Lehfeldt, Hill, Holmes, Deluca, Dubrovich, and Pagnanelli and nominal Defendant USFA:

A.  An order enjoining any action by Defendants to remove Plaintiff Geva from the USA Fencing Board and affirming his continued status as a duly elected Director;

B.  An order enjoining any amendment to the Bylaws while this action is being litigated;

C.  An order removing Defendant Lehfeldt from his position as Chair of the USA Fencing Board due to material breaches of fiduciary duty and conflict of interest violations;

D.  An order barring Defendant Lehfeldt from seeking or holding any elected leadership position within USA Fencing for a period of five (5) years; and

E.  An order removing Defendants Hill, Holmes, Deluca, Dubrovich, and Pagnanelli from their positions as directors of the USA Fencing Board due to material breaches of fiduciary duty;

F.  An order of judicial auditing of USFA starting from 2023, including without limitation an order directing USFA and Defendants to provide an accounting for all donations made in the name of either Plaintiff;

G.  An order barring Defendants from sanctioning Plaintiff Salem with regard to any of the subjects at issue in this complaint or preventing him from speaking at future meetings; and

H.  Such other and further relief as the Court deems just and proper.

Alan Sweetbaum verifies that all of the facts contained herein are true and correct to the best of his knowledge.

SWEETBAUM MILLER PC

By: *s/Alan D. Sweetbaum*
Alan D. Sweetbaum, #13491
*Attorneys for Plaintiffs*

<u>*Plaintiffs' Addresses*</u>:
Andrey Geva
1446 Scenic Ridge Drive
Houston, TX 77043

Abdel Salem
15280 Churchill PL
Colorado Springs, CO 80921

41

## Verification

    I hereby certify under penalty of perjury that the contents of this Verified Director Derivative Complaint, which is brought derivatively on behalf of the United States Fencing Association (USFA), are true and correct to the best of my knowledge, information, and belief.

Andrey Geva
At-Large Director
United States Fencing Association

## <u>Verification</u>

I hereby certify under penalty of perjury that the contents of this Verified Director Derivative Complaint, which is brought derivatively on behalf of the United States Fencing Association (USFA), are true and correct to the best of my knowledge, information, and belief.

Abdel Salem
At-Large Director
United States Fencing Association