<table>
<tr>
<td>

DISTRICT COURT, El Paso County, Colorado

270 S. Tejon St.
Colorado Springs, CO 80903

**Plaintiffs:**
ANDREY GEVA, ABDEL SALEM as directors,
derivatively on behalf of USA FENCING, a Colorado
nonprofit corporation,

v.

**Defendants:**
USA FENCING and DAMIEN LEHFELDT, MOLLY
HILL, KAT HOLMES, LAURYN DELUCA, JACKIE
DUBROVICH, ANDREA PAGNANELLI

</td>
<td>

DATE FILED
April 7, 2026 9:24 AM
CASE NUMBER: 2025CV31304

**Court Use Only**

Case No. **2025CV31304**

Division: **21**

</td>
</tr>
</table>

**ORDER RE: DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS' CORRECTED MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

This Matter comes before the Court on Defendants Damien Lehfeldt, Molly Hill, Kat Holmes, Lauryn DeLuca, Jackie Dubrovich, Andrea Pagnanelli and USA Fencing's Motion to Dismiss Plaintiffs' Amended Complaint pursuant to C.R.C.P. 12(b)(2), 12(b)(5) and 12(b)(6), and on Plaintiffs' Motion for Leave to File Second Amended Complaint. Upon consideration of the motions and responses, the pleadings, the record, and the relevant authorities, the Court finds and orders as follows.

**PROCEDURAL HISTORY**

On June 13, 2025, Plaintiffs Andrey Genva and Abdel Salem filed the instant derivative action, in their capacity as directors, on behalf of USA Fencing. USA Fencing is a nonprofit membership corporation with its principal office located in Colorado Springs, Colorado. As defendants, Plaintiffs named USA Fencing as a nominal defendant and several members of its Board of Directors: Damien Lehfeldt, Molly Hill, Kat Holmes, Lauryn Deluca, Jackie Dubrovich, and Andrea Pagnanelli (hereafter referred to as "Individual Defendants").

Plaintiffs filed an Amended Verified Derivative Complaint on June 20, 2025.

On August 7, 2025, Defendants filed an opposed Motion to Stay Proceedings, pending resolution of a similarly situated case involving USA Cricket before the Colorado Supreme Court. This Court determined that the outcome of that case would govern the instant matter and therefore granted the stay.

Due to the lack of progress in the USA Cricket case, Defendants subsequently filed a Motion to Lift the Stay, which the Court granted on January 3, 2026.

On January 26, 2026, Plaintiffs filed a Motion for Leave to File a Second Amended Complaint. That same day, Defendants filed a Motion to Dismiss Plaintiffs' initial Amended Complaint. Plaintiffs filed a response in opposition to the Motion to Dismiss, and the matter is now ripe for review.

**APPLICABLE AUTHORITY**

C.R.C.P. 12(b) permits certain defenses to be raised by motion before a responsive pleading is filed. As relevant here, Rule 12(b)(2) allows dismissal for lack of personal jurisdiction, and Rule 12(b)(5) permits dismissal for failure to state a claim upon which relief can be granted.

**ANALYSIS**

**1.**      <u>**Personal Jurisdiction**</u>

A trial court has discretion to address a C.R.C.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction either on documentary evidence alone or after holding a hearing. <u>Archangel Diamond Corp. v. Lukoil</u>, 123 P.3d 1187, 1192 (Colo. 2005), as modified on denial of reh'g (Dec. 19, 2005). Neither party has requested a hearing, and the Court elects to decide the motion based on the written materials.

When a court decides the motion based solely on documentary evidence without conducting an evidentiary hearing, the plaintiff need only demonstrate a prima facie showing of

2

personal jurisdiction to defeat the motion. Id. A prima facie showing exists where the plaintiff raises a reasonable inference that the court has jurisdiction over the defendant. Keefe v. Kirschenbaum & Kirschenbaum, P.C., 40 P.3d 1267, 1272 (Colo. 2002). The Court must accept as true the well-pleaded allegations in the complaint to the extent they are not contradicted by competent evidence and resolves factual conflicts in the plaintiff's favor. Archangel, 123 P.3d at 1192.

For a Colorado court to exercise jurisdiction over a non-resident defendant, the court must comply with Colorado's long-arm statute and constitutional due process. Align Corp. v. Boustred, 2017 CO 103, ¶ 9. Because Colorado's long-arm statute confers on courts the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions, a plaintiff's ability to establish jurisdiction over a non-resident defendant necessarily depends on whether a Colorado court's exercise of that jurisdiction comports with due process. Id.

The United States Supreme Court has emphasized that an employee or officer's contacts with the forum state "are not to be judged according to their employer's activities there," and that "each defendant's contacts with the forum State must be assessed individually." Calder v. Jones, 465 U.S. 783, 790 (1984). Similarly, jurisdiction is proper only when the defendant's own actions create a substantial connection with the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

A state may exercise personal jurisdiction over a non-resident defendant only when that defendant has certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945) In assessing

3

whether a defendant has minimum contacts with the forum state, a court properly focuses on the relationship among the defendant, the forum, and the litigation. Calder, 465 U.S. at 788.

This relationship-based approach to questions of personal jurisdiction has given rise to two distinct categories of jurisdiction, namely, general jurisdiction and specific jurisdiction. Magill v. Ford Motor Co., 2016 CO 57, ¶ 15.

General jurisdiction allows a court to hear any claim against a nonresident corporation, even claims unrelated to the forum, but requires a heightened showing of "continuous and systematic" contacts. Id. For a court to exercise general personal jurisdiction over an individual, the individual must be domiciled within the state. In re Marriage of Green, 2024 CO 24, ¶ 17.

Specific jurisdiction, by contrast, depends on the relationship between the defendant's forum-related conduct and the claims asserted. To satisfy specific jurisdiction, the defendant must have (1) purposefully directed activities at Colorado, and (2) the litigation must arise out of, or relate to, those activities. Burger King, 471 U.S. at 472.

Courts apply two common analytical frameworks in evaluating purposeful direction:

(1) The Calder "effects test," which requires (a) an intentional act, (b) expressly aimed at the forum state, and (c) knowledge that the brunt of the injury would be felt in the forum. State ex rel. Weiser v. JUUL Labs, Inc., 2022 CO 46, ¶ 47.

(2) The "market-exploitation test," under which a defendant purposefully directs activities into the forum state when the defendant continuously and deliberately exploits the forum market. Id. at ¶ 41.

If a plaintiff has established that a defendant has the requisite minimum contacts under either specific or general jurisdiction, "these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and

4

substantial justice." <u>Burger King</u>, 471 U.S. at 476. Considerations like the burden on the defendant, the forum state's interest in adjudicating the dispute, and the plaintiff's interest in obtaining convenient and effective relief may sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. <u>Keefe</u>, 40 P.3d at 1271–72. If the defendant's contacts are weak, even a modest showing of unreasonableness defeats jurisdiction; conversely, a strong showing of reasonableness may support jurisdiction when contacts are borderline. <u>Archangel</u>, 123 P.3d at 1195.

    A.  <u>Colorado Lacks General Jurisdiction Over the Individual Defendants.</u>

At the outset, the Court finds that it does not have general jurisdiction over any Individual Defendant. Plaintiffs expressly concede that no Individual Defendant is domiciled in Colorado, which is the touchstone for general personal jurisdiction over individuals. <u>In re Marriage of Green,</u> ¶ 23. Their argument that "Defendants had continuous contact with El Paso County in the form of meetings related to their role as USFA Board members" and therefore are subject to general jurisdiction conflates the jurisdictional standards applicable to corporations with those applicable to natural persons. Because no Individual Defendant is domiciled in Colorado, general jurisdiction is not available.

    B.  <u>Directorship in a Colorado Entity Alone is Insufficient to Establish Personal Jurisdiction.</u>

Plaintiffs argue that Individual Defendants are subject to personal jurisdiction in part because they serve as directors of a Colorado nonprofit. But the Colorado Supreme Court has recently emphasized that personal jurisdiction over corporate directors cannot be imputed from the corporation itself and must instead be established through each director's own, forum-connected conduct. <u>JUUL Labs, Inc.</u>, 2022 CO 46, ¶ 34.

5

Plaintiffs rely on <u>Public Warranty Corp. v. Mullins</u>, 757 P.2d 1140 (Colo. App. 1988), to argue that Colorado courts may exercise jurisdiction over directors based on their service to a Colorado corporation. But <u>Public Warranty</u> is meaningfully distinguishable. In that case, the defendant personally chose Colorado as the site of the corporation's business activities, himself travelling to Colorado to sign the articles of incorporation, conduct that aligns closely with what later jurisprudence has described as the market-exploitation basis for jurisdiction. The defendant's intentional use of Colorado's corporate law and business environment created the minimum contacts sufficient for specific jurisdiction.

By contrast, <u>JUUL Labs Inc.</u> observed that the market-exploitation test typically applies to corporate entities, not individual directors, and noted that courts have been reluctant to apply that test to individuals because the relevant factors, sales volume, customer base, and revenue, are attributes of the corporation, not its board members. <u>Id.</u> at ¶ 43. The court did not categorically bar use of the market-exploitation test for directors, but it expressed caution in doing so. The court therefore focused on the directors' own suit-related conduct under the effects test and concluded that in <u>JUUL Labs Inc.</u>'s case, such conduct did not establish the minimum contacts necessary for specific jurisdiction.

Additionally, the record in this case contains no allegation that any Individual Defendant took steps analogous to those in <u>Public Warranty,</u> such as selecting Colorado as the site of corporate formation or personally invoking Colorado's statutory or commercial environment. Plaintiffs do not contend that any Individual Defendant chose Colorado as USA Fencing's principal place of business or where to incorporate. Furthermore, Plaintiffs themselves rely, both by the citations and elements used, on the <u>Calder</u> effects test rather than the market-exploitation

6

test, arguing that Defendants' actions were directed at Plaintiffs and at USA Fencing, with resulting injury purportedly felt in Colorado.

Accordingly, Public Warranty does not assist Plaintiffs, and directorship in a Colorado corporation, without more, does not establish personal jurisdiction under Colorado's long-arm statute or due-process principles.

C. The Calder Effects Test Is Not Satisfied as to Any Individual Defendant.

Because being a director of a Colorado corporation alone is insufficient to establish personal jurisdiction, as made clear in JUUL Labs Inc., the Court must analyze each Individual Defendant's own conduct under the Calder effects test. Accordingly, the Court evaluates whether the alleged intentional acts of each Defendant were expressly aimed at Colorado and undertaken with knowledge that the brunt of any injury would be felt there.

i. Intentional Acts

The first prong of the effects test requires a plaintiff to allege a defendant's intentional act. JUUL Labs, Inc., ¶ 54. Crucially, the act must be suit-related conduct, not passive presence, mere association with other wrongdoers, or conduct that is attenuated from the alleged harm. Walden v. Fiore, 571 U.S. 277, 286 (2014); JUUL Labs, Inc., ¶¶ 54–55 (finding that directors "viewed presentations," "received information," or "forwarded" materials not intentional acts under the Calder effects test).

The Amended Complaint alleges several affirmative acts by each Individual Defendant, including sending emails or messages, requesting or participating in a special meeting, advancing motions, and engaging in various governance-related communications. These are intentional acts in the limited sense required to satisfy the first prong of the effects test. At the same time, Plaintiffs also rely on a number of allegations that describe only passive conduct, such as remaining silent,

7

failing to object, failing to recuse, or merely being present during portions of Zoom meetings. Under JUUL Labs Inc., such passive or attenuated allegations do not constitute suit-related intentional acts for jurisdictional purposes. Accordingly, the Court proceeds to the remaining prongs of the effects test considering only the affirmative conduct alleged, and not the passive or derivative actions that do not qualify as intentional conduct.

### ii. Expressly Aimed at Colorado

Although the Amended Complaint alleges certain affirmative acts by each Individual Defendant, Plaintiffs do not allege facts showing that any of those intentional acts were "expressly aimed" at Colorado. Walden makes clear that the effects test requires suit-related conduct targeting the forum state itself, not actions directed at a plaintiff who happens to reside there or at a corporation that happens to maintain its principal office there. 571 U.S. at 289–90. Likewise, in JUUL Labs, Inc., the Colorado Supreme Court held that acts undertaken in the course of internal corporate governance, even if intentional, do not constitute forum-directed conduct unless the plaintiff can show that the defendant purposefully directed those acts at the forum state. 2022 CO 46, ¶¶ 48–52.

Here, none of the acts Plaintiffs identify, whether it is the sending of emails or text messages, the request for or participation in the May 24, 2025 special meeting, the introduction or support of motions during that meeting, or statements made during the congressional hearing in Washington, D.C., is alleged to have been undertaken because of Colorado, directed into Colorado, or focused on Colorado residents or Colorado interests. The Amended Complaint situates the relevant events in Washington, D.C., Utah, or virtual meetings held by Zoom, and Plaintiffs do not allege that any director tailored their conduct toward Colorado or sought to cause effects uniquely in this forum. Indeed, Plaintiffs frame the alleged harm as impacting USA Fencing's national

membership, national reputation, and national governing-body status, confirming that Colorado was not the focal point of the conduct. Plaintiffs therefore fail to satisfy the second prong of the effects test.

### iii. *Knowledge That the Brunt of the Injury Would Be Felt in the Forum State*

Even assuming Plaintiffs had shown that any intentional conduct was expressly aimed at Colorado, the Amended Complaint does not plausibly allege that any Individual Defendant acted with knowledge that the brunt of the injury would be felt in Colorado. Plaintiffs point primarily to two facts: that USA Fencing is incorporated in Colorado and maintains its principal place of business in Colorado Springs, and that Plaintiff Salem resides in Colorado. These allegations, however, do not satisfy the third prong of the effects test. As the United States Supreme Court made clear in Walden, the fact that a plaintiff or a corporate entity happens to be located in the forum cannot, by itself, establish that the defendant knew the forum would bear the primary impact of the alleged conduct; the forum cannot be "made the focal point" of the jurisdictional analysis solely by virtue of the plaintiff's or corporation's connections to it. 571 U.S. 277. And in JUUL Labs Inc., the Colorado Supreme Court rejected a similar argument, noting that even where a corporation had substantial Colorado contacts, there was no showing the individual directors understood Colorado, rather than the corporation's national consumer base, to be the locus of any resulting injury. 2022 CO 46, ¶ 58.

Here, Plaintiffs repeatedly characterize USA Fencing as a national governing body, with the alleged harms, loss of reputation, governance instability, and potential decertification, affecting members, athletes, and stakeholders across the United States, not Colorado specifically. Moreover, the Amended Complaint alleges no facts suggesting that any Defendant directed conduct at Plaintiff Salem because he resides in Colorado, or that any Defendant believed Colorado would be

9

disproportionately affected by the alleged wrongdoing. On the face of the Amended Complaint, Colorado appears only as the site of USA Fencing's headquarters, not as the jurisdiction where Defendants allegedly expected the consequences of their actions to be principally felt. Thus, Plaintiffs fail to satisfy the third requirement of the effects test as to every Individual Defendant.

D. Personal Jurisdiction Here Would Offend Fair Play and Substantial Justice.

Even if the Court were to assume that Plaintiffs had established some minimal, suit-related contacts between any Individual Defendant and Colorado, the exercise of personal jurisdiction in this case would nevertheless fail under the "fair play and substantial justice" inquiry. See Burger King, 471 U.S. at 476); Keefe, 40 P.3d at 1271–72. The Individual Defendants reside in Virginia, California, New York, Ohio, and New Jersey, and none maintains a physical presence, business operations, or ongoing activities in Colorado. Requiring them to defend a lawsuit here would impose substantial burdens on parties most of whom, according to the record, do not travel to Colorado for board business and have no ongoing connection to the state beyond their positions on the board of a national organization headquartered here. Plaintiffs, for their part, have not shown that the relevant witnesses, documents, or other evidence are located in Colorado, nor have they demonstrated that Colorado provides any unique convenience for the resolution of this dispute. Although Colorado has a general interest in regulating nonprofit corporations incorporated within its borders, such an interest cannot override the constitutional requirement that jurisdiction be reasonable in light of the defendant's forum contacts, particularly where, as here, those contacts are weak or nonexistent. In these circumstances, and consistent with the principles articulated in Keefe and Archangel, even a modest showing of unreasonableness defeats jurisdiction. The Court therefore concludes that the exercise of personal jurisdiction over any Individual Defendant would not comport with traditional notions of fair play and substantial justice.

10

Even accepting the allegations in the Amended Complaint as true, Plaintiffs have not made a prima facie showing that any Individual Defendant has the requisite minimum contacts with Colorado to permit the exercise of specific personal jurisdiction. As required by JUUL Labs Inc., the Court has assessed each Defendant's alleged conduct individually and not in the aggregate. The Amended Complaint identifies no conduct by any Defendant that was expressly aimed at Colorado or undertaken with the understanding that Colorado would bear the brunt of any resulting injury, and the allegations concerning USA Fencing's nationwide operations do not transform the corporation's Colorado headquarters into the focal point of the alleged wrongdoing. Moreover, none of the Individual Defendants are domiciled in Colorado to establish general jurisdiction. Even if the Court were to assume some minimal forum connection existed, exercising jurisdiction over nonresident directors dispersed across several states would not comport with fair play and substantial justice, particularly where Plaintiffs have made no showing that the witnesses or evidence are concentrated in Colorado or that Colorado is uniquely suited to resolve what they themselves describe as a national governance dispute. Accordingly, the Court concludes that it lacks personal jurisdiction over Individual Defendants, and it therefore cannot adjudicate Plaintiffs' claims against them.

### 2. **Indispensable Parties**

Individual Defendants argue that they, the USA Fencing directors alleged to have engaged in all of the challenged conduct, are indispensable parties under C.R.C.P. 19, and that because the Court lacks personal jurisdiction over them, the action must be dismissed under C.R.C.P. 12(b)(6). Plaintiffs respond that (1) Individual Defendants are not indispensable, and (2) even if one or more directors is outside the Court's jurisdiction, the case may proceed because USA Fencing is properly before the Court.

Under C.R.C.P. 19, a person must be joined if "in his absence complete relief cannot be accorded among those already parties" or if the person "claims an interest relating to the subject of the action" such that disposition in their absence would "impair or impede his ability to protect that interest." However, even when a person meets these criteria, Rule 19(b) requires courts to determine "whether in the interest of justice the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Courts must consider factors including the extent of prejudice, whether protective measures can lessen prejudice, whether judgment will be adequate, and whether plaintiff has an adequate remedy if dismissed. C.R.C.P. Rule 19. The test for determining indispensability under C.R.C.P. 19 is whether the absent person's interest in the subject matter of the litigation is such that no decree can be entered in the case which will do justice between the parties actually before the court without injuriously affecting the right of such absent person. Cruz-Cesario v. Don Carlos Mexican Foods, 122 P.3d 1078, 1080 (Colo. App. 2005).

Here, the Amended Complaint asserts all substantive wrongdoing against the Individual Defendants personally, including allegations of breaches of fiduciary duty, violations of bylaws, conflicts of interest, suppression of dissenting directors, improper censure, and actions taken to remove or silence the Plaintiffs. The relief requested likewise runs solely against those individuals: Plaintiffs seek their removal from office, injunctions restricting their future conduct, prohibitions on their ability to serve as directors, and judicial findings that they engaged in misconduct. None of these claims or forms of relief can be adjudicated or granted without the participation of the directors whose conduct is at issue. Plaintiffs name USA Fencing only as a nominal defendant, and they do not assert any independent claim for relief against the organization itself.

12

Directors whose conduct forms the basis for the alleged wrongdoing in a derivative action are indispensable because the Court cannot adjudicate the claims or grant effective relief in their absence. This principle is reflected in cases such as <u>Dowd v. Front Range Mines, Inc.</u>, 242 F. Supp. 591, 597 (D. Colo. 1965), and <u>Castner v. First National Bank of Anchorage</u>, 278 F.2d 376, 384 (9th Cir. 1960), both of which recognize that directors are indispensable where allegations of misconduct are asserted against them. Those circumstances are present here: Plaintiffs' allegations do not concern conduct by the corporation as an entity but instead concern specific discretionary decisions and alleged misconduct by the Defendants as individual directors.

Plaintiffs' suggestion, raised in their Response, that USA Fencing can adequately stand in the place of the Individual Defendants is unpersuasive. USA Fencing is not alleged to have engaged in any wrongdoing, and Plaintiffs seek no relief against it. Because this is a derivative suit, the corporation appears only as a nominal defendant. Leaving USA Fencing as the sole defendant would create an untenable posture in which the organization would be left to sue itself, a situation the Defendants' Reply correctly describes as non-justiciable. Plaintiffs seek determinations about the conduct, duties, and continued service of these Defendants as individuals, and only those individuals may defend such claims.

Because the Court has already determined that it lacks personal jurisdiction over each of the Individual Defendants, they cannot be joined in this action. Their absence prevents the Court from granting the requested relief or adjudicating the claims in equity and good conscience. Without those individuals, there is no case or controversy that the Court can resolve. Accordingly, dismissal against the remaining nominal defendant, USA Fencing Association, is required under C.R.C.P. 12(b)(6) for failure to join indispensable parties.

**3.     <u>Businesses Judgment Rule</u>**

Because the Court has found that it does not have personal jurisdiction over Individual Defendants and the action cannot proceed against all indispensable parties, the Court need not consider the parties' arguments regarding the business judgement rule.

**4.    Suit Against USA Fencing**

With the dismissal of Individual Defendants for lack of personal jurisdiction, the only remaining defendant is USA Fencing, which is named solely as a nominal party in this derivative action. The claims asserted in the Amended Complaint are directed exclusively at the conduct of the individual directors, and the relief sought—removal from office, injunctive restrictions, and findings of misconduct—runs only against those individuals.

As discussed above, Individual Defendants are indispensable parties under C.R.C.P. 19. Because the Court lacks personal jurisdiction over them, they cannot be joined in this action. In their absence, the Court cannot accord complete relief or adjudicate the claims in equity and good conscience.

A derivative action cannot proceed against the corporation alone where the alleged wrongdoing is attributed solely to individual directors and no independent claim is asserted against the corporation. In such circumstances, the corporation remains only a nominal defendant and cannot be both the beneficiary of the claims and the sole party against whom relief is sought. Proceeding in this posture would present no justiciable controversy.

Accordingly, because indispensable parties cannot be joined, and because the action cannot proceed against USA Fencing alone, dismissal is required under C.R.C.P. 12(b)(6) for failure to join parties under Rule 19.

**5.    Plaintiffs' Motion for Leave to File Second Amended Complaint**

14

Because the Court dismisses this action for lack of personal jurisdiction over Individual Defendants and for failure to join indispensable parties, there is no remaining case in which an amended pleading could operate. Plaintiffs' Motion for Leave to File a Second Amended Complaint is therefore denied as moot.

## CONCLUSION

For the reasons set forth above, the Court concludes that it lacks personal jurisdiction over each Individual Defendant and that those defendants are indispensable parties under C.R.C.P. 19 whose absence prevents the Court from granting relief or adjudicating Plaintiffs' claims. Because Individual Defendants cannot be joined, the action cannot proceed against the remaining nominal defendant, USA Fencing, and no justiciable controversy remains. In light of the dismissal of this action, Plaintiffs' Motion for Leave to File a Second Amended Complaint is moot.

## ORDER

For the reasons set forth above, the Court finds that Plaintiffs have not asserted a prima facie case of personal jurisdiction over Individual Defendants and that the suit cannot stand with USA Fencing as the sole remaining defendant. IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss is GRANTED pursuant to C.R.C.P. 12(b)(2) and 12(b)(6), that this case is DISMISSED, and that Plaintiffs' Motion for Leave to File a Second Amended Complaint is DENIED as moot.

SO ORDERED.

Done this 7th day of April 2026.

BY THE COURT:

15

_____

MICHAEL P. MCHENRY
District Court Judge

16